## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PENNINGTON SEED, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **THE SCOTTS MIRACLE-GRO** | ) | |
| **COMPANY, Inc. and THE** | ) | |
| **SCOTTS COMPANY LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Pennington Seed, Inc., ("Pennington"), by and through its undersigned attorneys, for its Complaint against Defendants The Scotts Miracle-Gro Company, Inc., and The Scotts Company LLC (collectively, "Scotts"), alleges the following:

### NATURE OF THE CASE

1.     This is an action to obtain injunctive relief and damages for false advertising and deceptive business practices in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Georgia Uniform Deceptive Practices

1

Act, O.C.G.A. § 10-1-370 *et seq*., the Georgia False Advertising Law, O.C.G.A. § 10-1-420 *et seq*., and the Georgia common law of unfair competition.

2.      This action arises from Scotts' practices of false advertising and unfair competition in interstate commerce.  In advertising their EZ Seed® mulch seed product ("EZ Seed"), Scotts makes several false and misleading claims regarding 1 Step Complete™ ("1 Step Complete"), a mulch seed product marketed and sold by Pennington that directly competes against Scotts' EZ Seed in the mulch seed market.

3.      Pennington's 1 Step Complete is a comprehensive lawn care product that allows consumers to grow thicker, healthier, and greener grass than standard grass seed by using a pre-mixed formulation of ingredients including a combination of mulch, grass seed, and fertilizer.  This mixture enables grass roots to better mine nutrients and absorb water from the soil, resulting in better grass growth that is more resistant to draughts and inconsistent watering.

4.      Scotts markets and sells EZ Seed, a mulch seed product that, on information and belief, contains a pre-mixed formulation of ingredients including combination mulch, grass seed and fertilizer.[1]

---

[1] Although Pennington's 1 Step Complete and EZ Seed both contain combination mulch, seed, and fertilizer, the composition and concentration of each of these ingredients differs between the two products.

5.     Scotts' advertising campaign for EZ Seed is littered with claims that are literally false, misleading, impliedly false, and false by necessary implication.  Scotts' advertisements appear nationally on television, on its website, www.scotts.com, on in-store promotional displays, and on the product's label.  The story board for the Scotts' television commercial is attached as Exhibit A.  The advertisement appearing on Scotts' website is attached as Exhibit B.  The in-store advertisement is attached as Exhibit C, and the EZ Seed product label claim is attached as Exhibit D.

6.     Scotts' television commercial (the "EZ Seed Commercial") makes false and misleading claims that 1 Step Complete is composed entirely of "ground up paper."  Scotts' EZ Seed Commercial falsely and misleadingly claims that Scotts' EZ Seed product is superior to Pennington's 1 Step Complete.

7.     Scotts' misrepresentations about the composition of 1 Step Complete are material.  By falsely advertising 1 Step Complete as a paper-only product, Scotts' EZ Seed advertising campaign intentionally misleads consumers into believing that 1 Step Complete does not contain a combination mulch, seed, and fertilizer mix, and, therefore, is not an all-in-one lawn care solution that promotes grass growth.

8.     Scotts' internet advertisement makes false and misleading

claims that EZ Seed absorbs more water and retains moisture for a longer period of time compared to 1 Step Complete.  Moreover, a pictorial timeline included in the advertisement falsely and misleadingly represents that EZ Seed is superior to 1 Step Complete, which is not the case.

9.      The product package label for EZ Seed contains the false and misleading claim that the product will achieve "50% thicker [grass] with half the water."  This claim is unsubstantiated, and reliable scientific testing demonstrates that EZ Seed does not obtain thicker growth with half the water.

10.     By falsely advertising that 1 Step Complete is a paper-only product, Scotts' EZ Seed advertising campaign intentionally misleads consumers into believing that 1 Step Complete does not contain a combination mulch, seed, and fertilizer mix, and, therefore, is not an all-in-one lawn care solution that promotes grass growth.

11.     Scotts' misrepresentations about the superiority of EZ Seed generally and about EZ Seed's water retention capabilities are material.  Scotts' false and misleading internet and in-store advertisements reflect its integrated marketing efforts to promote EZ Seed and disparage 1 Step Complete by reinforcing to consumers the false and misleading claims that 1 Step Complete has inferior water absorption and retention capabilities.

12.     As a result of Scotts' actions, Pennington has suffered, and will continue to suffer, substantial and irreparable harm.  Unless Scotts' unfair methods of competition and false and deceptive practices are enjoined, Pennington will continue to lose sales of its mulch product, its reputation will continue to be damaged, and its profitability severely impaired.

## THE PARTIES

13.     Plaintiff Pennington Seed, Inc., is a Delaware Corporation with its principal place of business located at 1280 Atlanta Highway, Madison, Georgia, 30650.  Pennington is one of the largest producers and marketers of grass seed in the world and one of the largest manufacturers and distributors of lawn, garden, and turf care products.  Pennington specially designs its grass seed products for use in various climactic conditions such as extreme heat, cold, precipitation, and drought, sun, and shade, as well as for a variety of specific purposes, such as forage, wildlife, and turf designed specifically for different types of professional sports.  It operates state-of-the-art manufacturing facilities, observation nurseries, and quality control labs across the United States.  Pennington currently has more than 800 employees and over 16,000 dealers worldwide.

14.     Pennington is a wholly owned subsidiary of Central Garden & Pet Company.  Pursuant to Fed. R. Civ. P. 17(a), Pennington is the real party in interest, and Central Garden & Pet Company agrees to be bound by the decision of this Court.  Central Garden & Pet Company further ratifies Pennington's right to bring this action on its behalf to the extent any of its rights are implicated in this action.

15.     Defendant Scotts Miracle-Gro Company, Inc., (NYSE: SMG) is incorporated in Delaware and has its principal place of business at 14111 Scottslawn Road, Marysville, Ohio 43040.  On information and belief, Scotts is the world's largest marketer of branded consumer lawn and garden products.  On information and belief, Scotts also sells a variety of grass seed products of different quality and price that are designed for different regions and climates.

16.     Defendant The Scotts Company LLC is an Ohio Limited Liability Company with its principal place of business located at 14111 Scottslawn Road, Marysville, Ohio, 43041.  On information and belief, The Scotts Company LLC is a wholly owned subsidiary of Scotts Miracle-Gro Company, Inc.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. § 1338(b), and supplemental

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.     This Court has venue over this matter based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and personal jurisdiction exists over Scotts in this District.

19.     This Court has personal jurisdiction over Scotts because this action arises out of the transaction of business, commission of tortious injury, and other activities committed by Scotts within this District, which is also where Pennington's principal place of business is located.

## FACTUAL ALLEGATIONS

### Scotts' False and Misleading Advertisements

20.     On information and belief, on or around March 1, 2012, Scotts began an integrated marketing campaign consisting of the EZ Seed Commercial, internet, in-store, and packaging advertisements that falsely and misleadingly represent the nature, characteristics and qualities of Pennington's 1 Step Complete vis-à-vis Scotts' EZ Seed.

A.    Scotts' False and Misleading EZ Seed Commercial

21.    Scotts is currently airing the EZ Seed Commercial, a thirty second television advertisement for EZ Seed that makes false, misleading, and malicious claims about 1 Step Complete. (*See* Exhibit A).

22.    Scotts' EZ Seed Commercial opens with a dog sitting on a brown, torn apart patch of grass while barking up at two male actors. One of the actors is holding a bottle of EZ Seed while the other is holding a bottle of 1 Step Complete. The EZ Seed Commercial clearly and unmistakably identifies the packaging and labels for both products.

23.    At the EZ Seed Commercial's four second mark, the actors begin a three second dialogue, during which time the 1 Step Complete product is in plain view. The actor holding the bottle of 1 Step Complete tells the other actor that he is "just about to use" the product to repair the unsightly patch of grass upon which his barking dog sits. Pennington's brand name and the 1 Step Complete label come into focus when the actor pours some of the product into his hand. As the mulch product falls from the 1 Step Complete bottle into the actor's hand, the actor holding EZ Seed states, in reference to 1 Step Complete, "that's a bunch of ground up paper." As shown below, 1 Step Complete remained in plain view during this disparaging and untrue statement.

8



24.     Immediately after calling 1 Step Complete "a bunch of ground up paper," the EZ Seed Commercial focuses on Scotts' product, with the actor holding up the bottle of EZ Seed, unscrewing its cap, and stating:  "Scotts' EZ Seed uses the finest seed, fertilizer, and natural mulch that absorbs and holds water better than paper can."



25.    As the actor states that EZ Seed "absorbs and holds water better than paper can," the EZ Seed Commercial shows close-up images of EZ Seed being sprinkled over a brown patch of grass to demonstrate the product's purported ability to absorb water.



26.    To show the composition of EZ Seed's mixture, the EZ Seed Commercial zooms into the soil and offers viewers a close-up image of the seeds and mulch mixed together with the fertilizer.



27.    The EZ Seed Commercial then flashes to 21 days later, showing a green and fully established patch of grass at the actors' feet, with the actor previously planning to use 1 Step Complete saying, "EZ Seed really works."



28.     Scotts' EZ Seed Commercial is replete with false and misleading advertising claims.  It begins with the claim that 1 Step Complete is "a bunch of ground up paper," which is factually untrue.  First, by representing the product as "a bunch of ground up paper," the advertisement falsely claims that 1 Step Complete is a paper-only product.  However, 1 Step Complete combines mulch, consisting of cellulose fiber and wood fiber, with grass seed and fertilizer.  In fact, 1 Step Complete has double the amount of grass seed than EZ Seed's mixture.   Scotts' EZ Seed Commercial fails to mention any of these other ingredients.   Instead, the EZ Seed Commercial falsely represents that 1 Step Complete is "a bunch of ground up paper."  Second, the mixture's cellulose fiber, which Pennington assumes Scotts disparagingly calls "paper," is compressed and

not "ground up," rendering that statement false as well.

29.   In referring to 1 Step Complete as "a bunch of ground up paper," Scotts' EZ Seed Commercial communicates to consumers that 1 Step Complete is not an all-in-one mulch, seed, and fertilizer solution.  In fact, 1 Step Complete is a comprehensive lawn care product consisting of combination mulch, seed, and fertilizer that eliminates the need for consumers to purchase mulch, seed and fertilizer separately.  The combination of these components is pre-mixed so as to produce superior results when consumers seek to repair or patch their lawn.  By falsely describing 1 Step Complete as "a bunch of ground up paper," Scotts is seeking to deceive consumers into believing is EZ Seed is a superior product because it combines mulch, grass seed and fertilizer in a single product whereas 1 Step Complete does not.

30.   The EZ Seed Commercial then alleges that EZ Seed "absorbs and holds water better than paper can."  This reference to paper is clearly to 1 Step Complete.  Here, Scotts falsely claims that EZ Seed has superior water absorption and holding capabilities over 1 Step Complete that it describes as a paper-only product.  Since 1 Step Complete is not a paper-only product, this claim is also false.

31.   As such, the EZ seed commercial conveys the false message

13

that 1 Step Complete is comprised entirely of paper in at least four distinct respects: (1) calling 1 Step Complete "a bunch of ground up paper"; (2) presenting the visual image of 1 Step Complete being poured into an outstretched palm while the disparaging and untrue statement is made; (3) itemizing EZ Seed's own product ingredients while remaining silent on Pennington's ingredients; and (4) again comparing EZ Seed's ingredients to "paper" in terms of their respective water-saving capabilities.

32.     Furthermore, Scotts' false claim that EZ Seed "absorbs and holds water better than paper" is highly deceptive. By omitting the actual ingredients contained in 1 Step Complete while providing a close-up of EZ Seed's combination mulch, seed, and fertilizer, consumers will take away the unmistakable impression that this alleged paper-only product cannot effectively absorb or hold water. This is false as 1 Step Complete absorbs and holds water in a manner that renders performance that is equal to or superior to EZ Seed. The water absorption capability of EZ Seed is irrelevant to its performance, which is evident in the product's inferior performance against 1 Step Complete in reliable scientific testing.

33.     The deception in the EZ Seed Commercial does not end there. By showing a successfully established patched lawn after 21 days, Scotts falsely

communicates superiority over 1 Step Complete. First, the EZ Seed Commercial falsely implies that consumers will obtain a fully established patch of grass with EZ Seed after 21 days but will not with 1 Step Complete. This is demonstrably false as 1 Step Complete has been shown in reliable scientific testing to outperform EZ Seed throughout the establishment period, including at 21 days after planting. Second, the EZ Seed Commercial falsely conveys that the superior water absorption and holding capabilities of EZ Seed over a bunch of ground up paper – 1 Step Complete – will result in superior results.  Again, this is demonstrably false. The rate of water absorption and holding by EZ Seed does not render superior results, including after 21 days.  In fact, the water absorption characteristic of EZ Seed is believed to produce inferior results as it requires twice the water to saturate the mulch and then deprives the seeds of water, where it is most needed.

B.    Scotts' False and Misleading Internet Advertisement

34.    Scotts advertises on the internet at www.scotts.com. At http://www.scotts.com/smg/templateFramework/images/microSites/SCOTTSCOM/pdf/scotts/EZSeedvs1StepComplete.pdf is a side-by-side comparison of EZ Seed and 1 Step Complete.  Entitled "You Be The Judge . . .," this comparison identifies nine purported advantages of EZ Seed over 1 Step Complete and includes checks beside each point to indicate superiority. (*See* Exhibit B).

35.     The second page of the advertisement claims that EZ Seed "outperforms" 1 Step Complete in a "torture test," and shows a pictorial timeline purportedly comparing grass growth between the products at 7 days, 13 days, 17 days, and 32 days after planting.  The note at the bottom of the page fails to state whether or not each product was tested under the same conditions, according to the instructions on the bottles, or some other protocol, and instead ambiguously states: "Grown in sand pots with restricted water."   The pictures, however, indicate substantial differences in the application of the two products.  EZ Seed was spread evenly and consistently over the entire sand bed.  1 Step Complete, however, was applied in a sporadic manner, leaving large portions of the sand bed uncovered by the product, and clearly in a manner designed to produce disparate results.

36.     The first two points in the advertisement falsely claim that EZ Seed is superior to 1 Step Complete on the basis of "water absorption" and "moisture retention."   Scotts' claim that EZ Seed is superior to 1 Step Complete in terms of its ability to retain moisture is false and lacks reliable data to support the claim.  To obtain reliable moisture retention data between products, each product must receive equal amounts of water.  Yet, reliable scientific tests demonstrate that EZ Seed requires far greater initial watering than 1 Step Complete in order to achieve equivalent or longer periods of moisture retention.   In fact, when EZ Seed

and 1 Step Complete receive equal amounts of water, 1 Step Complete *significantly outperforms* EZ Seed in its ability to retain moisture over time. Thus, Scotts' false claim misleads and deceives consumers into believing that EZ Seed outperforms 1 Step Complete in moisture retention.

37.     Scotts' claim that EZ Seed is superior to 1 Step Complete in terms of water absorption is also deceptive to consumers. First, the claim is false and misleading because it conveys the message that both products require the same amount of water for purposes of saturation. In fact, EZ Seed requires twice the amount of water as 1 Step Complete to saturate. Second, reliable scientific testing proves that EZ Seed's ability to absorb water has no bearing on the product's performance. Indeed, tests show that 1 Step Complete results in better grass growth and greater root density compared to EZ Seed. Thus, the advertisement's claim of superior water absorption misleads and deceives consumers into believing that EZ Seed's ability to absorb water renders it superior to 1 Step Complete.

38.     The next seven points on the check list are either false and misleading or are wholly irrelevant to Scotts' claims of superiority over Scotts' claims over 1 Step Complete.  Point three claims that EZ is superior for "Growing Locations," stating: "Grows Anywhere – sunny, shady, high traffic, even pavement!"  It falsely claims that 1 Step Complete requires: "Full sun to medium shade."  These claims are false and misleading because 1 Step Complete grows in shade, on pavement, and in high traffic areas, and actually outperforms EZ Seed on pavement.

39.     Point four claims that EZ Seed is "Kid & Pet Friendly" whereas 1 Step Complete is not.  In claiming that EZ Seed is  "Mother Nature Approved 99.9% biodegradable, made with 96% renewable resources" and that 1 Step Complete "[c]ontains fungicide and dyes," Scotts deceptively conveys a message that 1 Step Complete is dangerous and hazardous to health.  This is outrageously deceptive as 1 Step Complete is not dangerous or hazardous to health and is in full compliance with EPA regulations and applicable federal and state laws.  In fact, Scotts is the world's largest seller of fungicides to homeowners, rendering Scotts' claim even more outrageous.

40.     Point five claims that EZ Seed is superior because "Controlled release nitrogen provides up to 6 weeks of feeding"  and that 1 Step Complete has

"[n]o controlled release claimed"  This is false.  Like EZ Seed, 1 Step Complete

contains a controlled release fertilizer, and Scotts' claim otherwise is made from

whole cloth.  Indeed, relying on the fact that none is "claimed" is simply deceptive.

 41. Point six claims a superior "Seed Mix" for EZ Seed's northern

sun and shade mix, claiming that it uses a "High performance mix with excellent

adaptability, longevity, & shade performance" while 1 Step Complete is "70%

ryegrass but only 10% bluegrass – means less cold & shade tolerance, and less self

repair."  This claim is false and misleading as no reliable scientific testing exists to

support Scotts' claim that its seed mix has better adaptability, longevity, or shade

performance than the seed mix used in 1 Step Complete.  On the other hand,

reliable scientific tests demonstrate that 1 Step Complete performs equally as well

or better in the cold or shade.

 42. Point seven claims a superior "Seed Mix" for EZ Seed's tall

fescue mix, claiming that it uses a "Tall fescue mix with Scotts' exclusive Thermal

Blue Blaze bluegrass that withstands tough southern heat and drought" whereas 1

Step Complete "[c]ontains tall fescue only."  This claim is false and misleading

because there is no reliable scientific testing to support Scotts' claim that its fescue

mix is better able to withstand southern heat and drought in comparison to 1 Step

Complete.

43.    Point eight claims that EZ Seed has superior "Storage" because its bags have a "resealable zipper" whereas bags of 1 Step Complete have "[n]o resealable feature."  The advertisement, however, shows both products packaged in bottles with screw top lids – not in resealable or non-resealable zipper bags.  Thus, Scotts' nonsensical comparison of this characteristic has absolutely no purpose other than to deceive consumers into believing that EZ Seed is a superior product.

44.    Point nine claims that EZ Seed is superior because Scotts allows consumers to return EZ Seed with "Scotts No-Quibble [Satisfaction] Guarantee – anytime with proof of purchase" while consumers using 1 Step Complete "[n]eed to send receipt, empty packaging & explanation within 60 days of purchase."  This claim is false and misleading because it implies that consumers must return products to the manufacturers.  As Scotts knows and as is commonly understood in the industry, 1 Step Complete may also be returned to retail stores. In fact, the vast majority of consumer returns, take place at the retail stores where the products are purchased.  The claim also implies that 1 Step Complete's return policy is more onerous and restrictive compared to EZ Seed's return policy.   In reality, both products offer consumers a similar satisfaction guarantee.

45.    By  placing  a  series  of  nine  checks  beside  the  product characteristics, Scotts' intent is to convey an overall superiority over 1 Step Complete that is false and misleading. Many of the selected characteristics are entirely irrelevant to either product's performance.  Furthermore, reliable scientific testing shows that 1 Step Complete performs equally as well or better than EZ Seed under the growing conditions purportedly measured in the advertisement.

46.    The  second  page  of  the  advertisement  contains  a  pictorial timeline purporting to show grass growing over a span of 32 days.  Scotts claims in the advertisement that "EZ Seed Outperforms [1 Step Complete] in a Torture Test." The "torture test" was purportedly conducted in "sand pots with restricted water."

47.    The  pictures  shown  of  the  planting  pots  for  1  Step  Complete indicate that that Scotts sporadically and haphazardly applied the product and left large portions of the planting surface uncovered.  This was clearly an effort by Scotts to falsely convey EZ Seed's superiority by disadvantaging 1 Step Complete.

48.     Furthermore, by conducting a "torture test" contemplating "restrictive water conditions," Scotts attempts to convey superiority under conditions that do not reflect the real world.  Scotts' claim is inherently false because EZ Seed and 1 Step Complete are sold primarily in the Spring, which is the rainy season in most parts of the country.  Even if a consumer fails to adequately water his or her grass, the drought-like conditions depicted in the advertisement bear no relation to the real world.  Simply put, the vast majority of consumers do not use these products under conditions contemplated in Scotts' "torture test."

C.     Scotts' False and Misleading In-Store Promotional Display

49.     In conjunction with Scotts' integrated marketing approach, Scotts sought to complete the circle by disseminating in-store display signs that falsely and maliciously disparage 1 Step Complete.  (*See* Ex. C).

50.     Scotts' in-store advertisements include a large display sign with the EZ Seed name at the top followed by the statement:  "REVOLUTIONARY GROWING MATERIAL OUTPERFORMS PAPER MULCH."  Underneath this tagline, the display sign shows a visual of two piles of mulch, one identified as "Old Technology Ground-Up Paper," and the other as "EZ Seed Super Absorbent Growing Material."  The advertisement touts EZ Seed's purported ability to retain

water for 30 hours and absorb 8 times its weight in water.  Scotts' display sign claims that EZ Seed is a superior product compared to "ground-up paper," which purportedly retained water for only 7 hours and absorbed 5 times its weight in water.

51.    EZ Seed and 1 Step Complete are primary competitors in the mulch seed market, and Scotts strategically positioned the display sign in close proximity to the store shelves where these products are sold.  Of course, the display sign's use of "paper mulch" and "ground up paper" are clear references to 1 Step Complete, which Scotts' EZ Seed Commercial also disparagingly calls "ground up paper."  Scotts' display sign misleads and deceives consumers at the point-of-purchase by reinforcing the impression that 1 Step Complete is a paper-only product rather than a comprehensive lawn care solution that promotes grass growth.  But as discussed herein, 1 Step Complete is composed of combination mulch, seed, and fertilizer, and is not "paper mulch" or "ground up paper."

52.    Furthermore, the water retention times and water absorption capabilities shown on Scotts' in-store display sign are the same as those used for Scotts' internet advertisement comparing EZ Seed and 1 Step Complete.  (*See* Ex. B).  As discussed herein, reliable scientific testing proves that Scotts' claim of superior moisture retention is false and that Scotts' claim of superior water absorption is misleading and deceptive because EZ Seed's purported ability to absorb more water has no bearing on its performance vis-à-vis 1 Step Complete.

D.    Scotts' False and Misleading EZ Seed Packaging Label Claim

53.    EZ Seed's front label falsely and misleadingly claims that it establishes grass "50% thicker with half the water" compared to ordinary grass seed.  (*See* Ex. D).  According to the label, this claim is based on a 32-day comparison study between EZ Seed and "ordinary seed," with "each watered at half the recommended rate for ordinary seed."  Although the label never defines "ordinary seed" or its "recommended rate" for watering, labels for "ordinary seed" products recommend only to "keep the soil moist."  Thus, "half the recommended [watering] rate for ordinary seed," as stated on EZ Seed's label claim, is not a definable measure.

54.     Reliable scientific testing demonstrates that EZ Seed's claim of "50% thicker with half the water" is false and misleading.  In a 32-day comparison study where ordinary seeds and EZ Seed were watered at half the recommended rate, there was no seedling emergence in either product after 32 days.  And when ordinary grass seeds were watered to "keep the soil moist," as recommended, and EZ Seed was watered with half that amount, as touted, the ordinary seeds outperformed EZ Seed.  In both cases, when EZ Seed was watered at half the recommended rate as ordinary seeds, it failed to produce *any* seedling emergence at the end of the growing period, proving that EZ Seed does not result in "50% thicker with half the water."

## Harm to Pennington

55.     Scotts timed the release of the false and misleading advertising discussed above to coincide with the beginning of Spring grass planting season, which is when most consumers buy mulch seed products, as this would maximize the unfair benefit they would obtain and cause the most damage to Pennington.  In fact, approximately 50% of Pennington's annual mulch and grass seed sales occur between March and May, which means that any disruption of Pennington's sales during this period due to Scotts' false and misleading claims will have catastrophic consequences on Pennington's annual sales of mulch seed product.

25

56.     Scotts' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and constitute a knowing attempt by Scotts to deceive consumers and misappropriate Pennington's customers.

57.     Pennington has built valuable goodwill in the Pennington brand as a result of the quality of its products and its extensive advertising.  Scotts' false and misleading claims have caused and continue to cause irreparable injury to Pennington's goodwill and reputation, for which Pennington has no adequate remedy at law.

58.     Pennington has lost, and will continue to lose, sales as a direct result of the Scotts' false and misleading claims.  In addition, Pennington has been forced to expend monies to counteract the negative effects of Scotts' false and misleading claims.

## COUNT I

## LANHAM ACT

59.     Pennington reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if specifically set forth herein.

60.     Scotts' false advertising claims, as described above, constitute false and misleading descriptions and representations of fact in interstate

commercial advertising and promotion.  Scotts' claims are false and misleading because, among other things including, as stated above, they materially misrepresent:  (1) that the 1 Step Complete mulch product is "a bunch of ground up paper," and, on account of this false claim, that EZ Seed is superior to 1 Step Complete; (2) that EZ Seed has superior water retention capabilities compared to 1 Step Complete; (3) that the differences in results between EZ Seed and 1 Step Complete are due to EZ Seed's superior water absorption and moisture retention capabilities; (4) that EZ Seed is of a particular standard, quality, or grade when it is of another; and (5) that 1 Step Complete is of a particular standard, quality, or grade when it is of another, all of which violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.   Scotts' false and misleading advertising claims, as described above, are material to consumers' purchasing decisions.

62.   Scotts' false and misleading advertising claims, as described above, are likely to deceive, have deceived, and will continue to deceive a substantial portion of consumers who use mulch seed products.

63.   Scotts' false and misleading descriptions of fact and false misrepresentations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

64.     Scotts' false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to Pennington's business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages.

65.     Pennington has no adequate remedy at law.

## COUNT II

## GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

66.     Pennington reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if specifically set forth herein.

67.     Scotts' false advertising claims, as described above, constitute deceptive trade practices in that, among other things including as stated above, Scotts (1) disparages 1 Step Complete by making false and materially misleading representations of fact including that 1 Step Complete is composed entirely of paper, and, on account of this false claim, that EZ Seed is superior to 1 Step Complete; that EZ Seed has superior water retention capabilities compared to 1 Step Complete; and that the differences in results between EZ Seed and 1 Step Complete are due to EZ Seed's superior water absorption and moisture retention capabilities; (2) misrepresents that EZ Seed is of a particular standard, quality, or grade when it is of another; (3) misrepresents that 1 Step Complete is of a

particular standard, quality, or grade when it is of another; and (4) otherwise engages in conduct which creates a likelihood of consumer confusion or misunderstanding about Scotts' EZ Seed and Pennington's 1 Step Complete products in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.* (including without limitation O.C.G.A. § 10-1-372).

68.   Scotts' false and misleading advertising claims, as described above, have deceived and will continue to deceive a substantial portion of the target audience for mulch seed products.

69.   Scotts' false and misleading advertising claims, as described above, are material to consumers' purchasing decisions.

70.   Scotts' false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

71.   Scotts' false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to Pennington's business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages.

72.   Pennington has no adequate remedy at law.

73.     Pursuant to the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-373, Pennington is entitled to attorney's fees and injunctive relief based on Scotts' willful engagement in deceptive trade practices.

## COUNT III

## COMMON LAW UNFAIR COMPETITION

74.     Pennington reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if specifically set forth herein.

75.     Pennington and Scotts are direct competitors in the mulch seed market.

76.     Scotts' false advertising claims, as described above, constitute unfair methods of competition and unfair and deceptive acts and practices, including but not limited to the use and employment of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression and omission of material facts, and with the intent that others rely upon the concealment, suppression and omission of such material facts in violation of Georgia's common law of unfair competition.

77.     Scotts has made express and implied representations of fact in advertising its EZ Seed mulch product in violation of Georgia's common law of unfair competition.   These acts constitute product disparagement and unfair competition in violation of the common law.

78.     Scotts' false and misleading descriptions of facts and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

79.     As a result of Scotts' acts, Pennington has suffered and will continue to suffer damage and irreparable injury, including but not limited to the loss of business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages.

80.     Pennington has no adequate remedy at law.

81.     Pennington is entitled to compensatory damages, punitive damages, and injunctive relief based on Scotts' violations of Georgia's common law of unfair competition.

## COUNT IV

## GEORGIA FALSE ADVERTISING LAW

82.     Pennington reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if specifically set forth herein.

83.    Scotts' advertising claims with respect to 1 Step Complete, as described above, constitute false and fraudulent statements disseminated, or caused to be disseminated, before the public in Georgia through television, internet, other advertising mediums, and product packaging.  Scotts knows, and by the exercise of reasonable care should know, that its advertising claims are false and fraudulent. Scotts' claims are false and misleading because, among other things including as stated above, they materially misrepresent:  (1) that 1 Step Complete is "a bunch of ground up paper," and, on account of this false claim, that EZ Seed is superior to 1 Step Complete; (2) that EZ Seed has superior water retention capabilities compared to 1 Step Complete; (3) that the differences in results between EZ Seed and 1 Step Complete are due to EZ Seed's superior water absorption and moisture retention capabilities; (4) that EZ Seed is of a particular standard, quality, or grade when it is of another; and (5) that 1 Step Complete is of a particular standard, quality, or grade when it is of another, all of which violate Georgia's False Advertising Law, O.C.G.A. § 10-1-420 *et seq.*

84.    Scotts' false and misleading advertising claims, as described above, have deceived and will continue to deceive a substantial portion of the target audience for Pennington's products.

85.    Scotts' false and misleading advertising claims, as described

32

above, are material to consumers' purchasing decisions.

86.    Scotts' false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

87.    Scotts' false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to Pennington's business reputation and injury to its goodwill, loss of competitive advantage, and pecuniary damages.

88.    Pennington has no adequate remedy at law.

89.    Pursuant to Georgia's False Advertising Law, O.C.G.A. § 10-1-423, Pennington is entitled to injunctive relief based on Scotts' untrue and fraudulent statements.

**COUNT V**

**<u>ATTORNEY'S FEES UNDER GEORGIA LAW</u>**

90.    Pennington reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if specifically set forth herein.

91.     Scotts' actions have been taken in bad faith, and Scotts has caused Pennington unnecessary trouble and expense, such that Pennington is entitled to recover its attorney's fees pursuant to O.C.G.A. § 13-6-11 and any other applicable law.

## COUNT VI

## PUNITIVE DAMAGES

92.     Pennington reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if specifically set forth herein.

93.     Scotts' conduct constitutes willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

94.     As a result, Pennington is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 because of Scotts' deceptive trade practices, unfair competition, libel, and tortious interference with business relations.

## PRAYER FOR RELIEF

**WHEREFORE,** Pennington respectfully request that this Court enter judgment in its favor and against Scotts as follows:

A.     Declaring that Scotts violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Georgia Uniform Deceptive Practices Act, O.C.G.A. § 10-1-370 *et seq*., Georgia False Advertising Law, O.C.G.A. § 10-1-420 *et seq*., and the Georgia common law of unfair competition.

B.     Preliminary and permanently enjoining Scotts, its officers, subsidiaries, parents, divisions, agents, servants, employees, and attorneys, and those persons in active concert or participation with Scotts, from using, airing, disseminating or causing to be used, aired, disseminated, any advertisements or packaging that contains the false and misleading claims discussed above;

C.     Preliminary and permanently enjoining Scotts, its officers, subsidiaries, parents, divisions, agents, servants, employees, and attorneys, and those persons in active concert or participation with Scotts, from stating, conveying, explicitly or implicitly, or suggesting by verbal message, visual image or otherwise, the false and misleading claims discussed above;

D.     Ordering Scotts to publish corrective advertising to dispel the false, deceptive, or impliedly false impressions created by the advertisements discussed above;

E.     Ordering Scotts to pay Pennington the profits earned by Scotts,

the damages suffered by Pennington, trebled, and the costs for bringing this action as a result of Scotts' false and misleading advertisements discussed above;

F.     Ordering Scotts to pay Pennington its damages, including punitive, compensatory and statutory damages, and up to three times as much by reason of Scotts' false and deceptive advertising and unfair competition;

G.     Ordering Scotts to pay Pennington's costs, disbursements, expenses and reasonable attorney's fees and expert fees in this action;

H.     Granting Pennington such other and further relief indentified under 35 U.S.C. §§ 1116, 1117, O.C.G.A. § 10-1-373, O.C.G.A. § 10-1-423, O.C.G.A. § 13-6-11, and/or O.C.G.A. § 51-12-5.1 that the Court deems reasonable; and

I.     Granting Pennington such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff  Pennington Seed, Inc. demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

**PENNINGTON SEED, INC.**

/s/ William M. Ragland, Jr.
William M. Ragland, Jr.
wragland@wcsr.com
Georgia State Bar No. 591888
WOMBLE CARLYLE SANDRIDGE
 & RICE, LLP
271 17th Street, NW
Atlanta, Georgia 30363
Phone:  404-872-7000

Ronald Y. Rothstein (*pro hac vice* pending*)*
rrothstein@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Phone:  312-558-5600 | Fax:  312-558-5700

*Attorneys for Plaintiff*