# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **PENNINGTON SEED, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 1:12-cv-0907-RWS** |
| | ) |
| **THE SCOTTS MIRACLE-GRO** | ) |
| **COMPANY, INC., and** | ) |
| **THE SCOTTS COMPANY LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF PENNINGTON SEED, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

/s/ William M. Ragland, Jr.
William M. Ragland, Jr.
wragland@wcsr.com
Georgia State Bar No. 591888
WOMBLE CARLYLE SANDRIDGE
 & RICE, LLP
271 17th Street, NW
Atlanta, Georgia 30363
Phone:  404-872-7000

/s/ Ronald Y. Rothstein
Ronald Y. Rothstein (*Pro hac vice*)
rrothstein@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Phone:  312-558-5600
Fax:  312-558-5700

*Attorneys for Pennington Seed, Inc.*

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................1

II. STATEMENT OF FACTS...........................................................................3

  A.  Pennington and 1 Step Complete ...................................................3

  B.  Scotts and the Advertised EZ Seed Product ....................................4

  C.  The EZ Seed Commercial................................................................5

  D.  Scotts' EZ Seed Internet Advertisement .........................................7

  E.  Scotts' EZ Seed In-Store Advertisement..........................................8

  F.  Pennington's Consumer Survey.......................................................8

III. ARGUMENT ..........................................................................................10

  A.  Pennington Is Substantially Likely to Succeed on the Merits.......................11

    1.  Scotts' EZ Seed Commercial is False and Misleading................................12

    2.  Scotts' EZ Seed Internet Advertisement Is False And Misleading. ............16

      i.  Scotts' Internet Advertisement is Not Based on the Current
         Formulation of 1 Step Complete. ..........................................16

      ii.  Scotts' Internet Advertisement Falsely Represents That EZ Seed
         is Superior to 1 Step Complete in Moisture Retention..........................17

      iii.  Scotts' Internet Advertisement Falsely Represents EZ Seed as
         Safer and More "Kid & Pet Friendly"....................................18

      iv.  Scotts' Internet Advertisement Falsely Represents That EZ Seed
         Outperformed 1 Step Complete in a 32-day "Torture Test." ...............19

    3.  The In-Store Advertisement Is False And Misleading. ...............................21

    4.  Pennington has a Likelihood of Success on the Remaining Elements
      of its Lanham Act False Advertising Claims............................................23

B.  Pennington Will Continue to Suffer Substantial Irreparable Harm If Its Motion Is Denied ..................................................................................25

C.  The Balance Of Harms Weighs In Pennington's Favor .................................26

D.  The Public Interest Will Be Served If An Injunction Is Granted ...................27

CONCLUSION ...................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alexis v. Mortgage Electronic Registration Systems, Inc.*,
   2012 WL 716161 (N.D. Ga. Mar., 5 2012) (Story, J.).............................................................10

*Bellsouth Commc'ns, Inc. v. Hawk Commc'ns, LLC*,
   2004 WL 1085324 (N.D. Ga. Apr. 12 2004) ..................................................................25, 27

*Castrol, Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993)...................................................................................................21

*Cunningham v. Adams*,
   808 F.2d 815 (11th Cir. 1987) ..............................................................................................10

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)................................................................................................................27

*Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*,
   725 F.2d 336 (5th Cir. 1984) .................................................................................................27

*Gold Kist, Inc. v. Conagra, Inc.*,
   708 F. Supp. 1291 (N.D. Ga. 1989) ......................................................................................25

*Hickson Corp. v. N. Crossarm Co.*,
   357 F.3d 1256 (11th Cir. 2004) .......................................................................................11, 12

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*,
   716 F.2d 833 (11th Cir. 1983) ...............................................................................................25

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242 (11th Cir. 2002) .......................................................................................11, 23

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
   848 F.2d 34 (2d Cir. 1988)....................................................................................................25

*Morgan Stanley DW, Inc. v. Frisby*,
   163 F. Supp. 2d 1371 (N.D. Ga. 2001) .................................................................................10

*N. Am. Med. Corp. v. Axiom Worldwide*,
   522 F.3d 1211 (11th Cir. 2008) .................................................................................23, 25, 28

*Osmose, Inc. v. Viance, LLC*,
   612 F.3d 1298 (11th Cir. 2010) ...................................................................................... passim

*Rolls-Royce Motors, Ltd. v. A & A Fiberglass, Inc.*,
　428 F. Supp. 689 (N.D. Ga. 1976) ...................................................................................25

*Sara Lee Corp. v. Kayser–Roth Corp.*,
　81 F.3d 455 (4th Cir. 1996) ............................................................................................14

*Sciele Pharma, Inc. v. Brookstone Pharma., LLC*,
　2011 WL 3844891 (N.D. Ga. Aug. 30, 2011) .................................................................12

*Winter v. Natural Res. Def. Council, Inc.*,
　555 U.S. 7 (2008)............................................................................................................10

**FEDERAL STATUTES**

15 U.S.C. § 1125(a) ..................................................................................................................11

## I.    <u>INTRODUCTION</u>

Pennington Seed, Inc.'s ("Pennington") 1 Step Complete™ and EZ Seed®, a product of The Scotts Miracle-Gro Company, Inc., and The Scotts Company LLC (collectively "Defendants" or "Scotts") are competing products on the mulch seed market, both of which are made up of pre-mixed blends of mulch, seed, and fertilizer.  On the cusp of the spring grass seed season—the most important 12-week period of the year for both companies—Scotts has begun to engage in a comprehensive national smear campaign consisting of false representations about Pennington's 1 Step Complete on television, online, and in print at the point-of-sale.  The thrust of Scotts' advertising campaign is that EZ Seed is superior and more effective than 1 Step Complete in numerous respects, that EZ Seed outperforms 1 Step Complete in testing, and that 1 Step Complete is comprised entirely of "a bunch of ground-up paper."  All of these advertisements are literally false, convey a materially false message to consumers that is irreparably damaging to Pennington, and are in violation of the United States Lanham Act and Georgia state law.

Scotts' deception began in late February-early March 2012, with EZ Seed advertisements appearing nationally on television (the "Commercial"), on its website at www.scotts.com (the "Internet Advertisement"), and on in-store

displays (the "In-Store Advertisement").  Scotts' EZ Seed advertisements reflect its no-holds-barred efforts to claim the superiority of EZ Seed while disparaging 1 Step Complete.[1]   These claims leave consumers with the distinctly false impressions that 1 Step Complete is an inferior and ineffective product in comparison to EZ Seed and that 1 Step Complete is a product comprised entirely of "ground-up paper."  All of these claims are literally false, impliedly false, or false by necessary implication because EZ Seed is not superior to 1 Step Complete, and 1 Step Complete is a comprehensive, all-in-one lawn-care solution comprised of mulch, seed, and fertilizer.  Indeed, 1 Step Complete and EZ Seed are premium products that sell at similar price points.  Scotts' disparaging and misleading advertisements hurt Pennington because consumers will not pay a premium price for an inferior mulch product misrepresented as "ground-up paper."

Within a day after Pennington became aware that the Commercial was airing, it requested that an independent survey expert test consumer reaction to the Commercial.   The results of the survey, finished on March 20, 2012 prove that consumers are dramatically misled by the Commercial.  The survey establishes that

---

[1] A DVD copy of the Commercial along with the storyboard and copies of the Internet Advertisement and In-Store Advertisement are attached to the Declaration of Ronnie Stapp ("Stapp Decl.") (attached hereto as Exhibit A) as Exhibits 1-4.

Scotts' false and misleading statements are extraordinarily damaging to Pennington's reputation and sales.

An immediate injunction against Scotts' false advertising campaign is in the public interest.  Every day that these advertisements air during this crucial season for Pennington's business results in severe and irreparable damage to Pennington's reputation and goodwill. [2]

## II.   STATEMENT OF FACTS

### A.   Pennington and 1 Step Complete

Pennington, a wholly owned subsidiary of Central Garden & Pet Company, is a large producer and marketer of mulch and grass seed.  (*See* Ex A, Stapp Decl. ¶ 3).  Pennington's 1 Step Complete is a comprehensive lawn-care product that allows consumers to repair "problem spots" in their lawn and grow thicker,

---

[2] Scotts is a repeat offender in terms of false and misleading advertising practices. In previous litigation between Pennington and Scotts in the Northern District of Georgia (No. 1:09-cv-903), Judge Beverly Martin, now sitting on Eleventh Circuit Court of Appeals, indicated at a hearing that she found Scotts' advertisement literally false and misleading.  *See* Ex. A, Stapp Decl. Ex. 7 at 174:20-24 ("I have no trouble finding that Scotts' advertisement showing the Scotts product next to a product labeled Pennington KY 31, or whatever it's called, when it was not in fact Pennington seed is literally false.").  Faced with the prospect of a preliminary injunction, Scotts pulled the commercial that same day.  In addition, on March 14, 2012, Scotts pleaded guilty in the United States District Court for the Southern District of Ohio for breaking federal pesticide laws.  (*See* Ex. A, Stapp Decl. Ex. 8).

healthier, and greener grass than standard grass seed. (*Id.* ¶ 4). 1 Step Complete consists of a pre-mixed blend of combination mulch, grass seed, and stabilized-release fertilizer. (*Id.*). The mulch used in 1 Step Complete is a professional-grade, proprietary blend of 65% wood fiber, 32% cellulose fiber, fertilizer, polymers, and moisture. (*See* Declaration of Russ Nicholson ("Nicholson Decl.") (attached hereto as Exhibit B) ¶ 5). These ingredients are mixed together and compressed. (*Id.* ¶ 7). The mulch mixture allows soil to better retain moisture, absorb water, and mine nutrients from the seedling germination stage to the establishment stage. (*Id.* ¶ 5). For grass seed, 1 Step Complete contains Pennington's premium Smart Seed™, which is specially designed to reduce dependency on traditional watering and promotes turfgrass establishment with natural rainfall or reduced watering frequency. (*Id.* ¶ 4).

**B.    Scotts and the Advertised EZ Seed Product**

Scotts is Pennington's direct competitor in the lawn and garden industry, and its EZ Seed mulch product directly competes with Pennington's 1 Step Complete. Although the concentration and composition of the ingredients differ, like 1 Step Complete, EZ Seed also consists of combination mulch, seed, and fertilizer. (Ex A, Stapp Decl. ¶ 6). 1 Step Complete and EZ Seed compete against each other at a very similar price point. In a recent price comparison at a major retail store, a 3 lb.

bottle of 1 Step Complete sold for $11.48 while a 3.75 lb. bottle of EZ Seed sold for $14.97.  (*Id.*).

## C.     The EZ Seed Commercial

On or about March 1, 2012, Scotts began airing the Commercial, a 30-second advertisement that promotes EZ Seed and disparages 1 Step Complete. (*See Id.* at Ex. 1-2).  From February 28, 2012, to March 20, 2012, the Commercial has aired at least 228 times on local television stations and national networks across the country.  (*See Id.* at Ex. 5) (television airing schedule).  In addition, a New York Times article recently cited the Commercial as an illustration of Scotts' "aggressive" advertising directed against competitor products.  (*See Id.* at Ex. 6).[3]

The Commercial opens with a dog sitting on a brown, torn-apart patch of grass while barking up at two male actors.  One of the actors is holding a bottle of EZ Seed while the other is holding a bottle of 1 Step Complete.  The Commercial clearly and unmistakably identifies the packaging and labels for both products.

---

[3] Scotts has not been bashful about publicizing its smear campaign.  On March 5, 2012, Scotts' "new campaign" was discussed in a New York Times article titled "*Ads for Lawn-Care Take a Highland Fling*."  *Id.*  In the article, Scotts' Chief Marketing Officer states that the company takes a "more competitively oriented" and "aggressive" approach towards advertising in certain markets.  (*Id.* at 3).  The article indicates that Scotts' false and misleading messages are resonating in the marketplace, as it specifically mentions the EZ Seed Commercial and references its false claim that 1 Step Complete is "a bunch of ground-up paper."  (*Id.*).

The actor holding the bottle of 1 Step Complete tells the other actor that he is "just about to use" the product to repair the unsightly patch of grass upon which his barking dog sits.  As the actor pours Pennington's 1 Step Complete into his hand, the actor holding EZ Seed states, in reference to 1 Step Complete, "that's a bunch of ground-up paper."  The bottle of 1 Step Complete, and its mulch seed, remain in plain view during this disparaging and untrue statement.

Immediately after calling 1 Step Complete "a bunch of ground-up paper," the Commercial focuses on Scotts' product, with the actor holding up the bottle of EZ Seed, unscrewing its cap, and stating:  "Scotts' EZ Seed uses the finest seed, fertilizer, and natural mulch that absorbs and holds water better than paper can."  As the actor states that EZ Seed "absorbs and holds water better than paper can," the Commercial shows close-up images of EZ Seed being sprinkled over a brown patch of grass to demonstrate the product's purported ability to absorb water.

To show the composition of EZ Seed's mixture, the Commercial zooms into the soil and offers viewers a close-up image of the seeds and mulch mixed together with the fertilizer.  The Commercial flashes to 21 days later, and shows a green and fully established patch of grass at the actors' feet, with the actor previously planning to use 1 Step Complete saying, "EZ Seed really works."  (*See Id.* at Ex. 1-2).

6

**D.**     **Scotts' EZ Seed Internet Advertisement**

Scotts runs an advertisement on its website with a side-by-side comparison of EZ Seed and 1 Step Complete.  (*Id.* at Ex. 3).[4]  Entitled "You Be The Judge . . . .," this comparison identifies nine purported advantages of EZ Seed over 1 Step Complete and includes checks beside each point to indicate superiority.  (*Id.*).

The second page of the advertisement claims that EZ Seed "outperforms" 1 Step Complete in a "torture test," and shows a pictorial timeline purportedly comparing grass growth between the products at 7 days, 13 days, 17 days, and 32 days after planting.  (*Id.* at 2).  The note at the bottom of the page fails to state whether or not each product was tested under the same conditions, according to the instructions on the bottles, or some other protocol, and instead states:  "Grown in sand pots with restricted water."  (*Id.*).  The pictures, however, indicate substantial differences in the application of the two products.  EZ Seed was spread evenly and consistently over the entire sand bed.  1 Step Complete, however, was applied in a sporadic manner, leaving large portions of the sand bed uncovered by the product, and clearly in a manner designed to produce disparate results.  It most certainly was not applied at the recommended rate of 1/8 inch thickness.  (Declaration of

---

[4]http://www.scotts.com/smg/templateFramework/images/microSites/SCOTTSCOM/pdf/ scotts/EZSeedvs1StepComplete.pdf

Kenneth W. Hignight ("Hignight Decl.") (attached hereto as Exhibit C) ¶ 18).

### E.   Scotts' EZ Seed In-Store Advertisement

Scotts is also disseminating in-store display signs that falsely and maliciously disparage 1 Step Complete.  (Ex A, Stapp Decl. Ex. 4).  Scotts' In-Store Advertisement includes a large display sign with the EZ Seed name at the top followed by the statement:   "REVOLUTIONARY GROWING MATERIAL OUTPERFORMS PAPER MULCH."  Underneath this tagline, it shows a visual of two piles of mulch, one identified as "Old Technology Ground-Up Paper," and the other as "EZ Seed Super Absorbent Growing Material."   The In-Store Advertisement touts EZ Seed's purported ability to retain water for 30 hours and absorb 8 times its weight in water.  Scotts claims that EZ Seed is a superior product compared to "ground-up paper," which, according to the In-Store Advertisement, retained water for only 7 hours and absorbed 5 times its weight in water.  (*Id.*).

### F.   Pennington's Consumer Survey

Pennington commissioned Dr. Thomas J. Maronick, DBA, J.D., an independent expert, to conduct a survey ("Maronick Survey") assessing whether the Commercial communicates false and misleading messages to consumers and what effect such messages have.  (*See* Declaration and Report of Dr. Thomas J. Maronick, DBA, J.D. ("Maronick Decl.") (attached hereto as Exhibit D)).   Dr.

Maronick began preparing the Maronick Survey on March 1, 2012, immediately after the first airing of the Commercial, and concluded his report on March 20, 2012.  In particular, Dr. Maronick analyzed the effects of Scotts' statements in the Commercial that describe Pennington's 1 Step Complete product as "a bunch of ground-up paper" and that EZ Seed performs better than paper.  (*Id.* at 3).  The Maronick Survey consisted of a test group that viewed the unmodified EZ Seed Commercial as aired on television, and a control group that viewed a modified version with references to "ground-up paper" and that EZ Seed performs better than paper removed.  (*Id*. at 5-6).  The survey was also designed to determine the Commercial's effect on purchase intent—namely, whether the purchase intent declined for 1 Step Complete.  (*Id.* at 6).

Dr. Maronick's study establishes that a significantly higher percentage of consumers who are exposed to the false claims that 1 Step Complete is "a bunch of ground-up paper" incorrectly believe that: (1) 1 Step Complete is entirely or substantially made from paper, and they have no understanding that the largest component of the mulch is composed of wood fiber, not paper; (2) EZ Seed is a superior product to 1 Step Complete; and (3) the Commercial has a significant negative impact on the likelihood that consumers will purchase Pennington's 1 Step Complete product.  (*Id.* at 10-11).

## III.   **ARGUMENT**

To obtain preliminary injunctive relief,[5] a movant must establish the following:  "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest."  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A district court has broad discretion to grant injunctive relief.  *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987).

---

[5] The standard that must be met for a temporary restraining order is the same as the standard for a preliminary injunction. *Alexis v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 716161, at *4 (N.D. Ga. Mar., 5 2012) ("The standard for a preliminary injunction also applies to a request for a temporary restraining order.") (Story, J.), *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001) ("The [preliminary injunction] standard applies to a request for a temporary restraining order.") (citing *Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir. 1995)).

## A.  Pennington Is Substantially Likely to Succeed on the Merits

To establish the likelihood of success on the merits of a false advertising claim under the Lanham Act, the party seeking injunctive relief must establish: "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising."  15 U.S.C. § 1125(a); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

A statement in an advertisement is false or misleading under the Lanham Act if it is either (1) "literally false as a factual matter," or (2) "literally true or ambiguous but which implicitly convey[s] a false impression, [is] misleading in context, or likely to deceive consumers." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004).  Where a plaintiff seeks to establish that an advertisement is literally true or ambiguous but misleading, there must be "evidence of deception" in the form of consumer surveys, market research, expert testimony, or other evidence." *1-800 Contacts, Inc.*, 299 F.3d at 1247.  To determine whether an advertisement is literally false or misleading, courts "'must analyze the message conveyed in full context . . . [and] must view the face of the

statement in its entirety.'"  *Osmose, Inc.*, 612 F.3d at 1308.  Finally, advertising that cites such testing is classified as an "establishment" claim.  *Id*. at 1310. In order to prove the literal falsity of such a claim, the plaintiff must prove only that the tests did not establish the proposition for which they were cited.  *Id.*

### 1.    Scotts' EZ Seed Commercial is False and Misleading

"The Lanham Act prohibits . . . the misrepresentation and false description of the nature of a product."  *Sciele Pharma, Inc. v. Brookstone Pharma., LLC*, 2011 WL 3844891, at *14 (N.D. Ga. Aug. 30, 2011).  Here, Scotts' EZ Seed Commercial is replete with false and misleading claims that (1) EZ Seed is a superior product; and (2) that 1 Step Complete is nothing more than "ground-up paper" that is not a comprehensive lawn care solution.

As discussed above and in the Hignight and Nicholson declarations, Scotts' suggestion that 1 Step Complete is "a bunch of ground-up paper" is literally false because 1 Step Complete combines mulch, consisting of 65% wood fiber and 32% cellulose fiber, with premium grass seed and fertilizer.  (Ex. C, Hignight Decl. ¶ 7; Ex. B, Nicholson Decl. ¶¶ 7-9).

To the extent Scotts argues the claim is ambiguous because it believes the cellulose fiber in 1 Step Complete is paper, the Maronick Survey demonstrates the claim is highly misleading to consumers.  (Ex. D, Maronick Decl. at 11); *Hickson*

*Corp.*, 357 F.3d at 1261 ("Consumer survey research often is a key part of a Lanham Act claim alleging that an advertisement is misleading or deceptive.") The Commercial does not acknowledge 1 Step Complete's actual ingredients, yet identifies and offers viewers a close-up of EZ Seed's combination mulch, seed, and fertilizer mix.  By doing so, the Commercial deceives consumers into believing that 1 Step Complete is an incomplete product rather than a comprehensive, all-in-one-lawn-care solution.[6]   This fact is demonstrated by the Maronick Survey, which shows that Scotts' "ground-up paper" claims are also impliedly false because they are likely to deceive consumers.  Based on the Maronick Survey, 28% of the respondents who viewed Scotts' Commercial for the Maronick Survey were misled to believe that Pennington's competing product was either entirely made from paper, made from paper and seed, or were otherwise misled about the inherent qualities of 1 Step Complete.  (Ex. D, Maronick Decl. at 11).  As numerous Courts have concluded, this is a very statistically significant degree of deception, well above the threshold necessary to find a Lanham Act Violation.[7]

---

[6]  Further, the mixture's cellulose fiber, which Pennington assumes Scotts disparagingly calls "paper," is compressed and not, as Scotts claims, "ground-up," rendering that statement literally false as well.  (Ex. B, Nicholson Decl. ¶ 9; Ex. C, Hignight Decl. ¶ 8).

[7]  *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594 (3d Cir. 2002) (finding that 15%

Indeed characterizing the product as a bunch of ground-paper leaves the distinct impression that the product lacks essential ingredients and separate purchases of seed and fertilizer are necessary.

Scotts' Commercial, in its entirety, also misleads consumers to believe that EZ Seed is superior to 1 Step Complete—*i.e.*, "a bunch of ground-up paper." *Osmose, Inc.*, 612 F.3d at 1308 (when analyzing false advertising claims, a court must consider the statement in its entirety within the "full context" of the advertisement). The claim that EZ Seed "absorbs and holds water better than paper," coupled with the surrounding imagery, is a false and misleading establishment claim of superiority. *Id.* at 1310.  First, because the product tested to support this claim was not the 2012 formula, this renders the science incapable of supporting the claim.  Second, by omitting the actual ingredients contained in 1 Step Complete and referring to it only as "paper", while providing a close-up of EZ Seed's blend of mulch, seed, and fertilizer, the Commercial deceives consumers into believing 1 Step Complete will not effectively absorb or hold water. (*Id.*)  As the Hignight declaration explains more fully, reliable scientific tests demonstrate that 1 Step Complete retains water *far better* than EZ Seed, rendering Scotts' claim

consumer confusion or deception is sufficient establish actual deception); *see also Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996) (holding that 15% was a "significant degree" of actual confusion).

false.  (*Id.* ¶¶ 11-12).[8]  Moreover, the water absorption characteristic of EZ Seed produces inferior results as it requires twice the water to sufficiently saturate the mulch and then deprives the seeds of water, where it is most needed.  (*Id.*).

Third, by showing a successfully patched lawn after 21 days – with the actor previously intending to use 1 Step Complete proclaiming, "EZ Seed really works" – Scotts falsely and misleadingly communicates EZ Seed's overall superiority over 1 Step Complete.  The Commercial implies that consumers will obtain a fully established patch of grass with EZ Seed after 21 days, but will not with 1 Step Complete.  This is demonstrably false as 1 Step Complete has been shown in reliable scientific testing to outperform EZ Seed throughout the establishment period, including at 21 days after planting.  (*Id.*)

The misleading nature of the claims of superiority in the commercial are again borne out by the Maronick Survey.  (Ex. D, Maronick Report at 8).  The Maronick Survey showed that 48%[9] of the respondents viewed EZ Seed to be a

---

[8] In addition, as also explained in the Hignight declaration, Scotts claim about the supposedly superior moisture retention capabilities of EZ Seed, even if it were true,  would be misleading because Scotts falsely suggests that water absorption capabilities result in better performance, which is not true.  (*Id.* ¶ 13).

[9] Only 13.9% of consumers who viewed the edited commercial took away a superiority message.

superior product. (*Id.*).[10]  It is evident from these results that the inclusion of the comparative superiority language in the Commercial disparaging Pennington's product conveys a false message of superiority to a substantial number of consumers, well above the threshold to find a Lanham Act violation. *See Novartis Consumer Health, Inc.*, 290 F.3d at 594.

### 2. Scotts' EZ Seed Internet Advertisement Is False And Misleading.

Scotts' EZ Seed Internet Advertisement includes several claims regarding the quality, nature, and characteristics of 1 Step Complete as compared to EZ Seed that are false and misleading under the Lanham Act.

### i. Scotts' Internet Advertisement is Not Based on the Current Formulation of 1 Step Complete.

Scotts' EZ Seed Internet Advertisement represents that the claims contained therein are based on internal testing conducted on EZ Seed and 1 Step Complete in February and March 2011.  (Ex A, Stapp Decl., Ex. 3 at 1-2).  Pennington, however, did not release its current formulation of 1 Step Complete until 2012. (Ex. B, Nicholson Decl. ¶ 5).  Unlike the previous Pennington mulch, which

---

[10] As explained in Dr. Maronick's report, these results are based on the answers to the "Main Idea" and "Anything Else" open-ended questions.  (*Id.*)  When consumers were asked if they perceived a comparison between the products there was a similar percentage increase (72.5% versus 56.8%) among consumers that viewed the entire Commercial. (*Id.*)

contained roughly 35% wood fiber and 65% cellulose fiber, the new mulch contains 65% wood fiber and 32% cellulose fiber.  (*Id.*)  Therefore, any comparative claims based on Scotts' testing of 1 Step Complete's previous formulation are invalid.  *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 761 (E.D.N.Y. 1996) (noting that defendant "quickly appreciated that the change in formulation rendered any comparative claims based on its field test of the [old] product invalid").[11]  By making superiority claims based on 1 Step Complete's old formulation, the Internet Advertisement contains superiority claims against a new 1 Step Complete formulation that Scotts never tested.

### ii.  Scotts' Internet Advertisement Falsely Represents That EZ Seed is Superior to 1 Step Complete in Moisture Retention.

The Internet Advertisement falsely claims that EZ Seed is superior over 1 Step Complete for "moisture retention," representing that EZ Seed retains moisture for 30 hours while 1 Step Complete retains moisture for 7 hours.  As discussed above and elaborated in greater detail in the Hignight declaration the notion that

---

[11]  Pennington's new formulation for the mulch contains a significantly higher amount of wood fiber (65%) and lower amount of cellulose fiber (32%) compared to the old formulation of 1 Step Complete.  (Ex. B, Nicholson Decl. ¶ 5).

EZ Seed retains moisture better than 1 Step Complete is demonstrably false based on scientific testing.  (*See* Ex. C, Hignight Decl. ¶¶ 11-12).[12]

### iii.    Scotts' Internet Advertisement Falsely Represents EZ Seed as Safer and More "Kid & Pet Friendly"

By claiming that EZ Seed is more "kid [and] pet friendly" than 1 Step Complete, Scotts reveals its willingness to transgress the boundaries of decency to disparage 1 Step Complete.    Specifically, Scotts represents that EZ Seed is "Mother Nature [a]pproved [and] 99.9% biodegradable, [and] made with 96% renewable resources" whereas 1 Step Complete "[c]ontains fungicides and dyes." (Ex A, Stapp Decl. Ex. 3 at 1).  Here, Scotts conveys an unmistakable message that 1 Step Complete is a dangerous and hazardous to health.  Of course, this is misleading and deceptive as 1 Step Complete is in full compliance with EPA regulations, and is not dangerous or hazardous to health.  (Ex. B, Nicholson Decl. ¶ 6).  Scotts' claim is even more disingenuous in light of the fact that its own product contains fertilizer and its label warns consumers:  "CAUTION:  KEEP OUT OF REACH OF CHILDREN!"  (Hignight Decl. Ex. 9).  Further, EZ Seed's Material

---

[12] To accurately measure moisture retention times between products, each product must receive equal amounts of water.  (Ex. C, Hignight Decl. ¶¶ 11-12).  When moisture retention tests were conducted properly—*i.e.*, when both products received the same amounts of water 1 Step Complete outperformed EZ Seed in terms of its ability to retain moisture for a longer period of time.  (*Id.*).

Data Safety Sheet states that it "may cause irritation" to the eyes and respiratory tract, and that it may "aggravate asthma." (*Id.* Ex. 11 at 1).[13]

> ### iv. Scotts' Internet Advertisement Falsely Represents That EZ Seed Outperformed 1 Step Complete in a 32-day "Torture Test."

Scotts' Internet Advertisement claim that "EZ Seed Outperforms [1 Step Complete] in a Torture Test," (Ex A, Stapp Dec. Ex. 3 at 2), also qualifies as an establishment claim as it states that a "favorable fact" about the product is "testor study-validated." *See Osmose, Inc.,* 612 F.3d at 1309 n.6 (discussing "establishment claims"). Such claims are false under the Lanham Act when the "tests [do] not establish the proposition for which they are cited." *Id.*

---

[13] Scotts' Internet Advertisement also claims that EZ Seed is superior because of its "[c]ontrolled release nitrogen provides up to 6 weeks of feeding" while 1 Step Complete has "[n]o controlled release claimed." (Ex. A, Stapp Dec. Ex. 3). This is false and misleading. In reality, 1 Step Complete—like EZ Seed—contains a controlled release fertilizer, and Scotts' claim otherwise comes from whole cloth. (*Id.* ¶ 5). Scotts' representation to consumers that none is "claimed" by 1 Step Complete has no purpose whatsoever other than to deceive. Likewise, the Internet Advertisement falsely claims that EZ Seed "grows anywhere" and performs better than 1 Step Complete in different climates and conditions including on pavement, in the cold, in the shade, and in "tough southern heat and drought." (Ex. A, Stapp Decl. Ex. 3 at 1). However, Scotts' broad superiority claims regarding its comparative growth under a vast range of conditions are unsupported by reliable scientific testing. (Ex. C, Hignight Decl. ¶ 18-19). Moreover, studies prove that 1 Step Complete outperforms EZ Seed on pavement and in drought-like conditions. (*Id.*).

By including a pictorial timeline of the "torture test" results immediately after the "check list" of superiority claims, Scotts' Internet Advertisement intends to convey a message of EZ Seed's overall superiority to 1 Step Complete. However, as explained in greater detail in the Hignight Declaration, Scotts' depiction is false and misleading because the "torture test" was clearly rigged to produce results favorable to Scotts. (Ex. C, Hignight Decl. ¶¶18-19).[14]

Advertisements based on test conditions that fail to account for the product's intended use and application in the "real world" are inherently false and misleading. *See, e.g., SC Johnson & Son, Inc.*, 930 F. Supp. at 768 (discrediting defendant's methodology for tests that eliminated "real world variables"). By conducting a "torture test" Scotts attempts to convey EZ Seed's superiority over 1 Step Complete under conditions that do not reflect the real world. Simply put, there is no evidence that consumers use these products as contemplated in Scotts' "torture test." Accordingly, Scotts' superiority claim is highly deceptive.[15]

---

[14] Among other deficiencies, the pictures of 1 Step Complete's planting pots indicate that Scotts failed to apply the product at 1/8 inch thickness as stated in the product's instructions and further applied 1 Step Complete in a sporadic and haphazard manner that left large portions of the planting surface uncovered. (*Id.*).

[15] Further, as discussed herein, Scotts' "torture test" is invalid for the additional reason that it is based on an old formula of 1 Step Complete that is no longer manufactured or sold by Pennington. (Ex. B, Nicholson Decl. ¶ 5).

### 3.     The In-Store Advertisement Is False And Misleading.

Scotts completes the circle by disseminating its In-Store Advertisement that further disparages 1 Step Complete.  (Ex A, Stapp Decl. Ex. 3).[16]  Scotts' In-Store advertisement is replete with false and misleading claims about 1 Step Complete.[17]

The In-Store Advertisement touts: "REVOLUTIONARY GROWING MATERIAL OUTPERFORMS PAPER MULCH," and contains visuals of two mulch piles, one identified as "Old Technology Ground-Up Paper" and the other as "EZ Seed Super Absorbent Growing Material."  (*Id.* at Ex. 4).   The In-Store Advertisement constitutes an establishment claim because it bears all of the characteristics of a claim that is supported by testing or studies.  *See Osmose*, 612

---

[16] By once again referring to 1 Step Complete as "ground-up paper," Scotts' claims mislead and deceive consumers at the point-of-purchase by reinforcing the false message that 1 Step Complete is a paper-only product rather than a comprehensive lawn-care solution that promotes grass growth.

[17] This statement represents a comparison between EZ Seed and 1 Step Complete by necessary implication in light of the exact same direct comparison in the Commercial, the fact that EZ Seed and 1 Step Complete are primary competitors in the mulch seed market, and the fact that Scotts strategically positioned its in-store Advertisement in close proximity to the store shelves where these two products are sold.  *See, e.g., Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) (finding that advertisement compared defendant's brand to competitor brands by necessary implication despite the offending claim's "failure to specifically mention [defendant's] competitors").

F.3d at 1310.

This claim is false and misleading because it misrepresents 1 Step Complete as "old technology" and "paper mulch" that is outperformed by Scotts. As discussed extensively herein, 1 Step Complete is not paper mulch. Moreover, the mulch in 1 Step Complete is not "old technology" as it consists of a high-grade, patented mulch blend wood fiber, cellulose fiber, and polymers and extensively tested for high performance. (*See* Ex. B, Nicholson Decl. ¶ 7, Ex. 1-2 (discussing and attaching patents covering the mulch formulation)).

Moreover, EZ does not outperform 1 Step Complete. The In-Store Advertisement states that EZ Seed retains water for 30 hours and absorbs 8 times its weight in water while the "old technology ground-up paper"—*i.e.* 1 Step Complete—retains water for only 7 hours and absorbs 5 times its weight in water. The In-Store Advertisement falsely represents that EZ Seed outperforms 1 Step Complete based on these characteristics, but, as discussed above, reliable scientific testing demonstrates that 1 Step Complete not only has superior water retention abilities, but outperforms EZ Seed from the germination to establishment stages. (Ex. C, Hignight Decl. ¶¶ 10-14).

Finally, as discussed above, these claims are also false by virtue of the fact that they compare EZ Seed to an older formulation of 1 Step Complete that is no longer on the market.  (Ex. B, Nicholson Decl. ¶ 5).

> **4.  Pennington has a Likelihood of Success on the Remaining Elements of its Lanham Act False Advertising Claims**

Because Pennington has demonstrated that Scotts' claims in the Commercial, Internet Advertisement and In-Store Advertisement are literally and impliedly false, the remaining elements of its false advertising claims under the Lanham Act are easily met. [18]

First, the deception contained in these advertising claims is likely to influence the purchasing decision.  *N. Am. Med. Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1226 (11th Cir. 2008) (quoting *1-800 Contacts, Inc.*, 299 F.3d at 1250). A plaintiff "may establish this materiality requirement by proving "'that the defendant has misrepresented an inherent quality or characteristic of the product.'" *1-800 Contacts, Inc.*, 299 F.3d at 1250.  Scotts' advertisements make false and misleading references to 1 Step Complete as "a bunch of ground-up paper",

---

[18] The interstate commerce requirement is easily met because it is these products at issue are sold at retail outlets in all 50 states.  (Ex. A, Stapp Decl. ¶¶ 9, 12). Furthermore, the EZ Seed Commercial has aired nationally on television, the In-Store Advertisement has been displayed in retail stores across the United States, and the Internet Advertisement targets a worldwide audience.  (*Id.* ¶ 9).

"paper", and "paper mulch" which mis-describe the nature, characteristics and quality of 1 Step Complete.

The Maronick Survey results further confirm that Scotts' deceptive advertising influences consumers' perception of the products and purchasing decisions. (Ex. D, Maronick Decl. at 8-9). Specifically, the Maronick Survey demonstrated a statistically significant increase in the percentage of consumers who responded that they were "Very Unlikely," "Somewhat Unlikely," or "Unlikely" to purchase Pennington's product after viewing Commercial with the disparaging claims in comparison to the control commercial where the claims were removed. (*Id.* at 9).[19]

Second, sales of Pennington's products will certainly continue to be harmed by Scotts' claims because the parties are direct competitors and the claims at issue call out and disparage Pennington's products directly. As discussed above, the Maronick Survey clearly demonstrates consumers are actually being deceived by Scotts' false and misleading advertising and that the claims are adversely affecting consumers' likelihood of purchasing Pennington's product. *See Osmose, Inc.*, 612

---

[19] Specifically, 65.2% of respondents who viewed the entire commercial were "Very Unlikely," "Somewhat Unlikely," or "Unlikely" to purchase Pennington's competing product while only 57.2% of the Control group who viewed a version of the commercial without such claims gave the same responses. (*Id.*)

F.3d at 1320. Accordingly, Pennington has lost, and continues to lose, sales as a direct result of these false and misleading claims. (Ex. D, Maronick Decl. at 11).[20]

Based on the above, Pennington established that Scotts is engaging in advertising that is false and misleading and prohibited under the Lanham Act such that Pennington is likely to succeed on such claims.[21]

### B. Pennington Will Continue to Suffer Substantial Irreparable Harm If Its Motion Is Denied

In the Eleventh Circuit, irreparable harm is presumed in a situation where the challenged advertising makes a misleading comparison to a competitor's product. *N. Am. Med. Corp.*, 522 F. 3d at 1227; *Bellsouth Commc'ns, Inc. v. Hawk Commc'ns, LLC*, 2004 WL 1085324, at *13 (N.D. Ga. Apr. 12 2004); *McNeilab,*

---

[20] In addition, Pennington is being forced to expend monies in an attempt to counteract the negative effects of Defendants' false and misleading claims. (Stapp. Decl. ¶¶15-16).

[21] Pennington is also likely to succeed on its remaining claims under state law because the standards governing the claims under the Georgia Unfair Trade Practices Act, Georgia False Advertising law, and Georgia common law are similar, if not identical, to those under the Lanham Act. *See, e.g.*, *Rolls-Royce Motors, Ltd. v. A & A Fiberglass, Inc.*, 428 F. Supp. 689, 693-94 (N.D. Ga. 1976) (Georgia trademark statute "is, both in structure and purpose, similar to its federal counterpart"); *cf. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 & n.14 (11th Cir. 1983) (test for deceptive trade practice and unfair competition under Georgia law same as test for false designation of origin under Lanham Act); *Gold Kist, Inc. v. Conagra, Inc.*, 708 F. Supp. 1291, 1303 (N.D. Ga. 1989) (selective Georgia state law claims "involve essentially the same test as the test under § 32 of the Lanham Act").

*Inc. v. Am. Home Prods. Corp.,* 848 F.2d 34, 38 (2d Cir. 1988).  Here, Scotts and Pennington are direct competitors in the mulch product market, and Scotts' integrated advertising campaign is littered with misleading comparisons between its EZ Seed product and Pennington's 1 Step Complete.  Accordingly, based on these cases, irreparable harm should be presumed.[22]

Nevertheless, to the extent there is any question regarding the validity of the presumption of irreparable harm, Pennington has lost, and will continue to lose, goodwill and sales as a direct result of the Defendants' false and misleading claims.  (Ex A, Stapp Decl. ¶ 15).  The Maronick Survey establishes that the misleading claims in the Commercial (which are similar or identical to claims advanced by Scotts through other media) directly result in a dramatic and statistically significant decline in perception and purchase intent among consumers exposed to such claims.  (Ex. D, Maronick Decl. at 8-9).

### C. The Balance Of Harms Weighs In Pennington's Favor

Unlike the substantial irreparable harm that will occur to Pennington's sales, reputation, and goodwill if this Motion is not granted, any harm that Scotts will

---

[22]  The Eleventh Circuit has twice declined to consider whether or not the presumption of irreparable harm under these circumstances remains valid in light of *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).  *See Osmose, Inc*., 612 F.3d at 1320; *N. Am. Med. Corp*., 522 F.3d at 1227 n.16.

suffer should the Motion be granted will be negligible at best.  Rather, granting the Motion will simply prohibit Scotts from continuing to profit from its blatantly unlawful, false and misleading misrepresentations in the Commercial, Internet Advertisement and In-Store Advertisement.  Requiring Scotts to pull a television commercial, remove false and misleading signage at retail stores and to remove false and misleading internet content is hardly a burden.  Accordingly, the balance of hardships therefore weighs overwhelmingly in Pennington's favor.

### D.    The Public Interest Will Be Served If An Injunction Is Granted

There is a strong public interest in ensuring that consumers receive truthful information.  *Bellsouth Commc'ns, Inc.*, 2004 WL 1085324, at *14.  Accordingly, one of the primary purposes behind the Lanham Act is to protect the purchasing public from being misled.  *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984).  There does not exist any constitutional or competitive right to engage in deceptive advertising.  *Bellsouth Commc'ns, Inc.*, 2004 WL 1085324, at *14.

As discussed herein, Scotts' EZ Seed Commercial, Internet Advertisement, and In-Store Advertisement convey deceptive messages to consumers regarding the nature, characteristics, and quality of Scotts' EZ Seed and Pennington's 1 Step Complete.  Accordingly, its advertising campaign harms the purchasing public by

robbing them of the ability to make educated purchasing decisions.  The public interest will best be served by granting temporary injunctive relief.

## CONCLUSION

For the reasons set forth above, Pennington respectfully requests that this Motion be GRANTED.

Dated:  March 21, 2012                    Respectfully submitted,

**PENNINGTON SEED, INC.**

/s/ William M. Ragland, Jr.
William M. Ragland, Jr.
wragland@wcsr.com
Georgia State Bar No. 591888
WOMBLE CARLYLE SANDRIDGE
 & RICE, LLP
271 17th Street, NW
Atlanta, Georgia 30363
Phone:  404-872-7000

/s/ Ronald Y. Rothstein
Ronald Y. Rothstein (*pro hac vice*)
rrothstein@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Phone:  312-558-5600 | Fax:  312-558-5700

*Attorneys for Pennington Seed, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PENNINGTON SEED, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  1:12-cv-907 - RWS** |
| | ) | |
| **THE SCOTTS MIRACLE-GRO** | ) | |
| **COMPANY, INC., and** | ) | |
| | ) | |
| **THE SCOTTS COMPANY LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF COMPLIANCE

As required by Local Rule 7.1D, I hereby certify that this Motion has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

Dated this 21st day of March, 2012.

/s/ William M. Ragland, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served the foregoing on the following outside

counsel for Defendants by electronic mail and U.S. Mail:


    Samuel A. Danon
    sdanon@hunton.com
    HUNTON & WILLIAMS LLP
    1111 Brickell Avenue, Suite 2500
    Miami, Florida 33131
    Telephone: (305) 810-2500

    Bradley W. Grout
    bgrout@hunton.com
    Joshua M. Kalb
    jkalb@hunton.com
    HUNTON & WILLIAMS LLP
    4100 Bank of America Plaza
    600 Peachtree Street, N.E.
    Atlanta, Georgia 30308
    Telephone: (404) 888-4283


                <u>/s/ Ronald Y. Rothstein</u>