**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| **PENNINGTON SEED, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  3:12-cv-254 (JRS)** |
| | ) | |
| **THE SCOTTS MIRACLE-GRO** | ) | |
| **COMPANY, INC., and** | ) | |
| | ) | |
| **THE SCOTTS COMPANY LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF PENNINGTON SEED, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF FACTS.................................................................................................3

    A.  Pennington and 1 Step Complete .....................................................................................3

    B.  Scotts and the Advertised EZ Seed Product......................................................................4

    C.  The EZ Seed Commercial and Radio Advertisement .........................................................4

    D.  Scotts' EZ Seed Internet Advertisement...........................................................................6

    E.  Scotts' EZ Seed In-Store Advertisement...........................................................................8

    F.  Pennington's Consumer Survey .......................................................................................8

III.  ARGUMENT ...................................................................................................................9

    A.  Pennington Is Substantially Likely to Succeed on the Merits ............................................9

        1.  Scotts' EZ Seed Commercial is False and Misleading ..................................................11

        2.  Scotts' EZ Seed Internet Advertisement Is False And Misleading..............................14

            i.  Scotts' Internet Advertisement is Not Based on the Current Formulation
               of 1 Step Complete. ............................................................................................14

            ii.  The Testing Upon Which Scotts Bases Its Scientific Claims
               of Superiority Is Fatally Flawed and Biased. ..................................................15

        3.  The In-Store Advertisement Is False And Misleading. ................................................17

        4.  Pennington has a Likelihood of Success on the Remaining
           Elements of its Lanham Act False Advertising Claims ................................................18

        5.  Pennington Has Moved Expeditiously in Enforcing its Rights. ...................................20

    B.  Pennington Will Continue to Suffer Substantial Irreparable Harm
       If Its Motion Is Denied.................................................................................................21

    C.  The Balance Of the Equities Tips In Pennington's Favor.................................................22

    D.  The Public Interest Will Be Served If An Injunction Is Granted.......................................23

CONCLUSION.....................................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Home Products Corp. v. Johnson & Johnson*
654 F. Supp. 568 (S.D.N.Y. 1987)......................................................................................23

*Black & Decker (U.S.), Inc. v. Pro-Tech Power, Inc.*,
26 F. Supp. 2d 834 (E.D. Va. 1998) ..................................................................................21

*C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*,
131 F. 3d 430 (4th Cir. 1997) ................................................................................10, 12, 17

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
284 F.3d 302 (1st Cir. 2002)...............................................................................................19

*Castrol, Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993).................................................................................................17

*Castrol, Inc. v. Quaker State Corp.*,
977 F.2d 57 (2d Cir. 1992)...................................................................................................17

*Chisholm v. U.S. Postal Serv.*,
665 F. 2d 482 (4th Cir. 1981) ................................................................................................9

*Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*,
725 F.2d 336 (5th Cir. 1984) ..............................................................................................23

*Gold Kist, Inc. v. Conagra, Inc.*,
708 F. Supp. 1291 (N.D. Ga. 1989) ....................................................................................20

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*,
716 F.2d 833 (11th Cir. 1983) ............................................................................................20

*JTH Tax, Inc. v. H & R Block Eastern Tax Servs.*,
128 F. Supp. 2d 926 (E.D. Va. 2001) .................................................................................21

*PBM Prods., LLC v. Mead Johnson & Co.*,
639 F.3d 111 (4th Cir. 2011) ....................................................................................... passim

*Pfizer, Inc. v. Miles, Inc.*,
868 F. Supp. 437 (D. Conn. 1994).......................................................................................15

*Real Truth About Obama v. Federal Election Com'n*,
575 F. 3d 342 (4th Cir. 2009) ...............................................................................................9

*Rolls-Royce Motors, Ltd. v. A & A Fiberglass, Inc.*,
     428 F. Supp. 689 (N.D. Ga. 1976) .........................................................................20

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*,
     547 F. Supp. 2d 491 (D. Md. 2008) .......................................................................21

*Sara Lee Corp. v. Kayser–Roth Corp.*,
     81 F.3d 455 (4th Cir. 1996) ...................................................................................12

*Star-Brite Distributing, Inc. v. Kop-Coat, Inc*,
     664 F. Supp. 2d 1246 (S.D. Fla. 2009) .................................................................15

Plaintiff Pennington Seed, Inc. ("Pennington") respectfully submits the instant memorandum in support of its Motion for Preliminary Injunction to enjoin false and misleading advertising claims made by Defendants The Scotts Miracle-Gro Company, Inc., and The Scotts Company LLC (collectively "Defendants" or "Scotts").[1]

## I.   INTRODUCTION

Pennington's 1 Step Complete™ and Scotts' EZ Seed®, are competing products on the mulch seed market, both of which are made up of pre-mixed blends of mulch, seed, and fertilizer.  On the cusp of the spring grass seed season—the most important 12-week period of the year for both companies—Scotts has begun to engage in a comprehensive national smear campaign consisting of false representations about Pennington's 1 Step Complete on television and radio, online, in print at the point-of-sale, and on the radio.  The thrust of Scotts' advertising campaign is that 1 Step Complete is comprised entirely of "a bunch of ground-up paper."  The advertising also conveys that EZ Seed is superior and more effective than 1 Step Complete in numerous respects and that EZ Seed outperforms 1 Step Complete in testing.   All of these advertisements are literally false, convey a materially false message to consumers that is irreparably damaging to Pennington, and are in violation of the Lanham Act and corresponding state law.

Scotts' deception began in late February-early March 2012, with EZ Seed advertisements appearing nationally on television (the "Commercial") and the radio, on its website at

---

[1] Pennington originally brought the claims at issue in this motion in the Northern District of Georgia and filed a Motion for Temporary Restraining Order and Preliminary Injunction.  Scotts countered with a Motion to Transfer Venue asking that the action to be consolidated with the instant action based on the "first-filed" rule.  On April 5, 2012, the Court in Georgia granted Scotts' motion and transfer that action to this Court.  The Georgia Court, however, did *not* address Pennington's Motion for Preliminary Injunction and explicitly deferred ruling on that issue to this Court.  That motion is re-raised herein.

www.scotts.com (the "Internet Advertisement"), and on in-store displays (the "In-Store Advertisement").  Scotts' EZ Seed advertisements reflect its no-holds-barred efforts to claim the superiority of EZ Seed while disparaging 1 Step Complete.[2]  These claims leave consumers with the distinctly false impressions that 1 Step Complete is an inferior and ineffective product in comparison to EZ Seed and that 1 Step Complete is a product comprised entirely of "ground-up paper."  All of these claims are literally false, impliedly false, or false by necessary implication because EZ Seed is not superior to 1 Step Complete, and 1 Step Complete is a comprehensive, all-in-one lawn-care solution comprised of mulch, seed, and fertilizer.  Indeed, 1 Step Complete and EZ Seed are premium products that sell at similar price points.

Scotts' establishment claims of superiority based on "testing" have been further exposed since the filing of this action as biased and fraudulent.  A declaration filed by Scotts' research scientist responsible for conducting the comparative product testing relied up of Scotts' claims, admits that the tests conducted by Scotts comparing EZ Seed and 1 Step Complete were fantastically flawed.  Specifically, in many tests, including those aimed at assessing the relative germination and seedling establishment of the two products, Scotts admittedly applied *twice as much* of its own EZ Seed product as 1 Step Complete.  In other tests measuring the relative water retention capabilities of the two products, Scotts admits it again applied twice as much of its own product and *four times* the amount of water.  It does not take an expert to recognize that due to the disparate application of the products, such tests were patently rigged to produce superior results for Scotts' product.  It defies common sense and all principles of scientific testing to apply such standards and any claims based on such tests are facially invalid.

---

[2] A DVD copy of the Commercial along with the storyboard and copies of the Internet Advertisement, and In-Store Advertisement are attached to the March 21, 2012 Declaration of Ronnie Stapp ("Stapp Decl.") (attached hereto as Exhibit A) as Exhibits 1-4.

Within a day after Pennington became aware that the Commercial was airing, Pennington sent a cease and desist letter to Scotts[3] and retained an independent survey expert test consumer reaction to the Commercial.   The results of the survey, finished on March 20, 2012 prove that consumers are dramatically misled by the Commercial.  The survey establishes that Scotts' false and misleading statements are extraordinarily damaging to Pennington's reputation and sales.

A preliminary injunction against Scotts' false advertising campaign is in the public interest.  Scotts' disparaging and misleading advertisements hurt Pennington because consumers will not pay a premium price for an inferior mulch product misrepresented as "ground-up paper." Every day that these advertisements air during this crucial season for Pennington's business results in severe and irreparable damage to Pennington's reputation and goodwill.[4]

## II.    STATEMENT OF FACTS

### A.    Pennington and 1 Step Complete

Pennington, a wholly owned subsidiary of Central Garden & Pet Company, is a large producer and marketer of mulch and grass seed.  (*See* Ex A, Stapp Decl. ¶ 3).  Pennington's 1 Step Complete is a comprehensive lawn-care product that allows consumers to repair "problem spots" in their lawn and grow thicker, healthier, and greener grass than standard grass seed.  (*Id.*

---

[3] The very next day, Scotts wrote to Pennington's counsel refusing to comply with the cease and desist request.

[4] Scotts is a repeat offender in terms of false and misleading advertising practices.  In previous litigation between Pennington and Scotts in the Northern District of Georgia (No. 1:09-cv-903), Judge Beverly Martin, now sitting on Eleventh Circuit Court of Appeals, indicated at a hearing that she found Scotts' advertisement literally false and misleading.  *See* Ex. A, Stapp Decl. Ex. 7 at 174:20-24 ("I have no trouble finding that Scotts' advertisement showing the Scotts product next to a product labeled Pennington KY 31, or whatever it's called, when it was not in fact Pennington seed is literally false.").  Faced with the prospect of a preliminary injunction, Scotts pulled the commercial that same day.  In addition, on March 14, 2012, Scotts pleaded guilty in the United States District Court for the Southern District of Ohio for breaking federal pesticide laws.  (*See* Ex. A, Stapp Decl. Ex. 8).

¶ 4).  1 Step Complete consists of a pre-mixed blend of combination mulch, grass seed, and stabilized-release fertilizer.  (*Id.*).  The mulch used in 1 Step Complete is a professional-grade, proprietary blend of 65% wood fiber, 32% cellulose fiber, fertilizer, polymers, and moisture. (*See* Declaration of Russ Nicholson ("Nicholson Decl.") (attached hereto as Exhibit B) ¶ 5). These ingredients are mixed together and compressed.  (*Id.* ¶ 7).  The mulch mixture allows soil to better retain moisture, absorb water, and mine nutrients from the seedling germination stage to the establishment stage.  (*Id.* ¶ 5).  For grass seed, 1 Step Complete contains Pennington's premium Smart Seed™, which is specially designed to reduce dependency on traditional watering and promotes turfgrass establishment with natural rainfall or reduced watering frequency.  (*Id.* ¶ 4).

### B.      Scotts and the Advertised EZ Seed Product

Scotts is Pennington's direct competitor in the lawn and garden industry, and its EZ Seed mulch product directly competes with Pennington's 1 Step Complete.  Although the concentration and composition of the ingredients differ, like 1 Step Complete, EZ Seed also consists of combination mulch, seed, and fertilizer.  (Ex A, Stapp Decl. ¶ 6).  1 Step Complete and EZ Seed compete against each other at a very similar price point.  In a recent price comparison at a major retail store, a 3 lb. bottle of 1 Step Complete sold for $11.48 while a 3.75 lb. bottle of EZ Seed sold for $14.97.  (*Id.*).

### C.      The EZ Seed Commercial and Radio Advertisement

On or about March 1, 2012, Scotts began airing the Commercial, a 30-second advertisement that promotes EZ Seed and disparages 1 Step Complete.  (*See Id.* at Ex. 1-2). Since February 28, 2012, the Commercial has aired at least <u>800 times</u> on local television stations and national networks across the country.  (*See* Supplemental Declaration of Ronnie Stapp, dated April 9, 2012 ("Supp. Stapp Decl." ) (attached hereto as Exhibit C) ¶ 7, Ex. 2).  In addition, a

New York Times article recently cited the Commercial as an illustration of Scotts' "aggressive" advertising directed against competitor products. (Ex. A, Stapp Decl. at Ex. 6).[5]

The Commercial opens with a dog sitting on a brown, torn-apart patch of grass while barking up at two male actors. One of the actors is holding a bottle of EZ Seed while the other is holding a bottle of 1 Step Complete. The Commercial clearly and unmistakably identifies the packaging and labels for both products. The actor holding the bottle of 1 Step Complete tells the other actor that he is "just about to use" the product to repair the unsightly patch of grass upon which his barking dog sits. As the actor pours Pennington's 1 Step Complete into his hand, the actor holding EZ Seed states, in reference to 1 Step Complete, "that's a bunch of ground-up paper." The bottle of 1 Step Complete, and its mulch seed, remain in plain view during this disparaging and untrue statement.

Immediately after calling 1 Step Complete "a bunch of ground-up paper," the Commercial focuses on Scotts' product, with the actor holding up the bottle of EZ Seed, unscrewing its cap, and stating: "Scotts' EZ Seed uses the finest seed, fertilizer, and natural mulch that absorbs and holds water better than paper can." As the actor states that EZ Seed "absorbs and holds water better than paper can," the Commercial shows close-up images of EZ Seed being sprinkled over a brown patch of grass to demonstrate the product's purported ability to absorb water.

---

[5] Scotts has not been bashful about publicizing its smear campaign. On March 5, 2012, Scotts' "new campaign" was discussed in a New York Times article titled "*Ads for Lawn-Care Take a Highland Fling.*" *Id.* In the article, Scotts' Chief Marketing Officer states that the company takes a "more competitively oriented" and "aggressive" approach towards advertising in certain markets. (*Id.* at 3). The article indicates that Scotts' false and misleading messages are resonating in the marketplace, as it specifically mentions the EZ Seed Commercial and references its false claim that 1 Step Complete is "a bunch of ground-up paper." (*Id.*).

To show the composition of EZ Seed's mixture, the Commercial zooms into the soil and offers viewers a close-up image of the seeds and mulch mixed together with the fertilizer. The Commercial flashes to 21 days later, and shows a green and fully established patch of grass at the actors' feet, with the actor previously planning to use 1 Step Complete saying, "EZ Seed really works." (*See Id.* at Ex. 1-2).

In addition to the version of the airing Commercial on television, since Pennington filed the instant action in Georgia, it has also become aware of a very similar radio version of the commercial, making the same false and misleading claims that "the ground up paper in Pennington Complete [sic]" "just can't match" Scotts' EZ seed. (*See* Ex. C Supp. Stapp Decl. ¶ 3).

### D.    Scotts' EZ Seed Internet Advertisement

Scotts runs an advertisement on its website with a side-by-side comparison of EZ Seed and 1 Step Complete. (Ex. A, Stapp Decl. at Ex. 3).[6] Entitled "You Be The Judge . . . .," this comparison identifies nine purported advantages of EZ Seed over 1 Step Complete and includes checks beside each point to indicate superiority. (*Id.*). Among the false superiority claims made in the Internet Advertisement are that EZ seed retains more than four times as much water as 1 Step Complete. (*Id.*). The second page of the advertisement claims that EZ Seed "outperforms" 1 Step Complete in a "torture test," and shows a pictorial timeline purportedly comparing grass growth between the products at 7 days, 13 days, 17 days, and 32 days after planting. (*Id.* at 2).[7]

---

[6]http://www.scotts.com/smg/templateFramework/images/microSites/SCOTTSCOM/pdf/scotts/EZSeedvs1StepComplete.pdf

[7] Even the pictures included with the Internet Advertisement illustrating Scotts' "torture test" establish that an improper protocol was maintained for such tests. Specifically, the pictures plainly indicate substantial differences in the application of the two products. EZ Seed was spread evenly and consistently over the entire sand bed. 1 Step Complete, however, was applied in a sporadic manner, leaving large portions of the sand bed uncovered by the product, and

As discussed in greater detail below, all of the advertising claims premised on "testing" are facially false because Scotts admittedly utilized an outdated version of Pennington's 1 Step Complete product which contained a different composition of mulch.  (Ex. B, Nicholson Decl. ¶ 5).  Pennington materially altered its 1 Step Complete formula in 2012 and the version of the product on which Scotts bases its superiority claims is no longer being manufactured by Pennington.  (*Id.*).  As indicated in Ronnie Stapp's Supplemental Declaration, only about 5% of the 1 Step Complete product remaining in the stores consists of the old formula, and this number dwindles by the day. (Ex. C, Supp. Stapp Decl. ¶ 6).[8]  As such, Scotts advertising claims that are based on this outdated testing are, on their face, unsupported and factually false.

Additionally, as also discussed below, Scotts' false superiority claims are based on fatally flawed testing wherein Scotts used twice as much of its own product as it used for Pennington's product and four times as much water on its own product in testing water retention.  These tests are patently biased in favor Scotts that any establishment claims stemming from such tests are inherently invalid.

---

clearly in a manner designed to produce disparate results.  It most certainly was not applied at Pennington's recommended rate of 1/8 inch thickness.  (Declaration of Kenneth W. Hignight, dated March 21, 2012 ("Hignight Decl.") (attached hereto as Exhibit D) ¶ 18).

[8] Scotts makes the misleading argument in the Sass Declaration that Pennington's old formula is more prevalent because a greater number of bags using Pennington's old packaging are on display in certain stores.  (*See* Declaration of John Sass, dated March 30, 2012 [Dkt 25-1-2] ("Sass Decl.") ¶ 3, Ex. 1).  This argument is irrelevant, however, because the product that is actually on display in retail stores constitutes a miniscule percentage of the overall product that has been ordered, shipped, and has even arrived at retail centers—particularly at the outset of the grass seed buying season.  (*See* Ex. C, Supp. Stapp Decl. ¶ 6).   It makes logical sense that retailers would seek to display and sell off the older version of the product to make room for the new product.  (*Id.*).  However, the fact remains that Pennington is not manufacturing or shipping products with the old formula and only a small and ever-decreasing percentage of the 1 Step Complete product are available to consumers for this grass seed buying season.  (*Id.*).

E.      **Scotts' EZ Seed In-Store Advertisement**

Scotts is also disseminating in-store display signs that falsely and maliciously disparage 1 Step Complete.  (Ex A, Stapp Decl. Ex. 4).  Scotts' In-Store Advertisement includes a large display sign with the EZ Seed name at the top followed by the statement:  "REVOLUTIONARY GROWING MATERIAL OUTPERFORMS PAPER MULCH."   Underneath this tagline, it shows a visual of two piles of mulch, one identified as "Old Technology Ground-Up Paper," and the other as "EZ Seed Super Absorbent Growing Material."   (*Id.*).   Scotts' In-Store Advertisement also repeats the same false claims from the Internet Advertisement that EZ Seed retains water more than four times long longer than 1 Step Complete.   Like the Internet Advertisement, such claims are based on testing of an older version of Pennington's product and utilized flawed testing methods wherein four times the water was provided to EZ Seed as compared to 1 Step Complete to justify a claim that it retains more than four times the water.

F.      **Pennington's Consumer Survey**

Pennington commissioned Dr. Thomas J. Maronick, DBA, J.D., an independent expert, to conduct a survey ("Maronick Survey") assessing whether the Commercial communicates false and misleading messages to consumers and what effect such messages have.  (*See* Declaration and Report of Dr. Thomas J. Maronick, DBA, J.D. ("Maronick Decl.") (attached hereto as Exhibit E)).  Dr. Maronick began preparing the Maronick Survey on March 1, 2012, immediately after the first airing of the Commercial, and concluded his report on March 20, 2012.   In particular, Dr. Maronick analyzed the effects of Scotts' statements in the Commercial that describe Pennington's 1 Step Complete product as "a bunch of ground-up paper" and that EZ Seed performs better than paper.  (*Id.* at 3).  The Maronick Survey consisted of a test group that viewed the unmodified EZ Seed Commercial as aired on television, and a control group that viewed a modified version with references to "ground-up paper" and that EZ Seed performs

better than paper removed.   (*Id.* at 5-6).   The survey was also designed to determine the Commercial's effect on purchase intent—namely, whether the purchase intent declined for 1 Step Complete.  (*Id.* at 6).

Dr. Maronick's study establishes that a significantly higher percentage of consumers who are exposed to the false claims that 1 Step Complete is "a bunch of ground-up paper" incorrectly believe that: (1) 1 Step Complete is entirely or substantially made from paper, and they have no understanding that the largest component of the mulch is composed of wood fiber, not paper; (2) EZ Seed is a superior product to 1 Step Complete; and (3) the Commercial has a significant negative impact on the likelihood that consumers will purchase Pennington's 1 Step Complete product.  (*Id.* at 10-11).

## III.   <u>ARGUMENT</u>

A plaintiff seeking a preliminary injunction must make a clear showing "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Real Truth About Obama v. Federal Election Com'n*, 575 F. 3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).   A district court has broad discretion to grant injunctive relief.  *See Chisholm v. U.S. Postal Serv.*, 665 F. 2d 482, 499 (4th Cir. 1981).

### A.       <u>Pennington Is Substantially Likely to Succeed on the Merits</u>

A plaintiff asserting false advertising under the Lanham Act must establish: "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false

or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (affirming district court's grant of injunctive relief for false advertising). As the Fourth Circuit noted, "[w]hen a violation has been established, the Lanham Act vests district courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to . . . prevent a violation under [the Lanham Act]." *Id.* at 126.

To establish false advertising under the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *Id.* at 120 (quoting *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F. 3d 430, 434 (4th Cir. 1997)). In analyzing a claim of literal falsity, "a court must determine, first, the unambiguous claims made by the advertisement . . . and second, whether those claims are false." *Id.* (citing *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002)). "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id.* Further, where an advertisement relies on test data to support its claims – i.e., establishment or "test prove" claims – then a plaintiff alleging falsity "need only show either (i) that the tests were not sufficiently reliable to permit the conclusion for which they are cited, or (ii) that the tests, even if reliable, do not establish the proposition asserted by the defendant." *C.B. Fleet Co., Inc.*, 131 F.3d at 435 (citing *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir. 1992) (holding that falsity of "tests show" claims may be proven by "showing that the tests ... were not

sufficiently reliable to permit one to conclude with reasonable certainty that they established the proposition")); *Intendis, Inc. v. River's Edge Pharma.*, LLC, 2011 WL 4442849, at *8 (D. Md. Sept. 22, 2011). Where literal falsity is shown, "a violation [of the Lanham Act] may be established without evidence of consumer deception." *PBM Prods., LLC*, 639 F. 3d at 120 (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)). However, where "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers." *Id.*

### 1.   Scotts' EZ Seed Commercial is False and Misleading

Scotts' EZ Seed Commercial is replete with false and misleading claims that (1) 1 Step Complete is nothing more than "ground-up paper" that is not a comprehensive lawn care solution, and (2) EZ Seed is a superior product.

As discussed above and in the Nicholson Declaration, Scotts' suggestion that 1 Step Complete is "a bunch of ground-up paper" is literally false because 1 Step Complete combines mulch, consisting of 65% wood fiber and 32% cellulose fiber, with premium grass seed and fertilizer. (Ex. B, Nicholson Decl. ¶¶ 7-9; *see also* Ex. D, Hignight Decl. ¶ 7).[9] To the extent Scotts argues the claim is ambiguous because it believes the cellulose fiber in 1 Step Complete is paper, the Maronick Survey demonstrates the claim is highly misleading to consumers. (Ex. E, Maronick Decl. at 11). *See also PBM Prods., LLC v. Mead Johnson & Co.*, *PBM Prods., LLC v. Mead Johnson & Co.*, 2010 WL 723750, at *4 (E.D. Va. March 2, 2010) (Spencer, J.) ("To prove implied falsity with a consumer survey, the survey must address the critical question in the case."), *aff'd* 639 F.3d 111 (4th Cir. 2011).

---

[9] Scotts' similar suggestion in the radio advertisement that very recently began running that "Pennington Complete" is "paper," is likewise false and misleading.

The Commercial does not acknowledge 1 Step Complete's actual ingredients, yet identifies and offers viewers a close-up of EZ Seed's combination mulch, seed, and fertilizer mix.  By doing so, the Commercial deceives consumers into believing that 1 Step Complete is an incomplete product rather than a comprehensive, all-in-one-lawn-care solution.[10]   This fact is demonstrated by the Maronick Survey, which shows that Scotts' "ground-up paper" claims are also impliedly false because they are likely to deceive consumers.   Based on the Maronick Survey, 28% of the respondents who viewed Scotts' Commercial were misled to believe that Pennington's competing product was either entirely made from paper, made from paper and seed, or were otherwise misled about the inherent qualities of 1 Step Complete.   (Ex. E, Maronick Decl. at 11).   As numerous Courts have concluded, this is a statistically significant degree of deception, well above the threshold necessary to find a Lanham Act violation.[11] Indeed, characterizing the product as a bunch of ground-paper leaves the distinct impression that the product lacks essential ingredients and separate purchases of seed and fertilizer are necessary.

Scotts' Commercial, in its entirety, also misleads consumers to believe that EZ Seed is superior to 1 Step Complete—*i.e.*, "a bunch of ground-up paper."   The claim that EZ Seed "absorbs and holds water better than paper," coupled with the surrounding imagery, is a false and misleading establishment claim of superiority.   First, because the product tested to support this claim was not the 2012 formula, this renders the science incapable of supporting the claim. Second, by omitting the actual ingredients contained in 1 Step Complete and referring to it only

---

[10] Further, the mixture's cellulose fiber, which Pennington assumes Scotts disparagingly calls "paper," is compressed and not, as Scotts claims, "ground-up," rendering that statement literally false as well.  (Ex. B, Nicholson Decl. ¶ 9; Ex. D, Hignight Decl. ¶ 8).

[11] *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594 (3d Cir. 2002) (finding that 15% consumer confusion or deception is sufficient establish actual deception); *see also Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996) (holding that 15% was a "significant degree" of actual confusion).

as "paper," while providing a close-up of EZ Seed's blend of mulch, seed, and fertilizer, the Commercial deceives consumers into believing 1 Step Complete will not effectively absorb or hold water.  As the Hignight declaration explains more fully, reliable scientific tests demonstrate that 1 Step Complete retains water *better* than EZ Seed, rendering Scotts' claim false.  (Ex. D, Hignight Decl. at ¶¶ 11-12).[12]  Moreover, the water absorption characteristic of EZ Seed produces inferior results as it requires twice the water to sufficiently saturate the mulch and then deprives the seeds of water, where it is most needed.  (*Id.*).

Third, by showing a successfully patched lawn after 21 days – with the actor previously intending to use 1 Step Complete proclaiming, "EZ Seed really works" – Scotts falsely and misleadingly communicates EZ Seed's overall superiority over 1 Step Complete.  The Commercial implies that consumers will obtain a fully established patch of grass with EZ Seed after 21 days, but will not with 1 Step Complete.  This is demonstrably false as 1 Step Complete has been shown in reliable scientific testing to outperform EZ Seed throughout the establishment period, including at 21 days after planting.  (*Id.*)

The misleading nature of the claims of superiority in the commercial are again borne out by the Maronick Survey.  (Ex. E, Maronick Report at 8).  The Maronick Survey showed that 48%[13] of the respondents viewed EZ Seed to be a superior product.  (*Id.*).[14]  It is evident from these results that the inclusion of the comparative superiority language in the Commercial

---

[12] In addition, as also explained in the Hignight declaration, Scotts claim about the supposedly superior moisture retention capabilities of EZ Seed, even if it were true,  would be misleading because Scotts falsely suggests that water absorption capabilities result in better performance, which is not true. (*Id.* ¶ 13).

[13] Only 13.9% of consumers who viewed the edited commercial took away a superiority message.

[14] As explained in Dr. Maronick's report, these results are based on the answers to the "Main Idea" and "Anything Else" open-ended questions.  (*Id.*)  When consumers were asked if they

disparaging Pennington's product conveys a false message of superiority to a substantial number of consumers, well above the threshold to find a Lanham Act violation.  *See Novartis Consumer Health, Inc.*, 290 F.3d at 594.

### 2. Scotts' EZ Seed Internet Advertisement Is False And Misleading.

Scotts' EZ Seed Internet Advertisement includes several claims regarding the quality, nature, and characteristics of 1 Step Complete as compared to EZ Seed that are false and misleading under the Lanham Act.

### i. Scotts' Internet Advertisement is Not Based on the Current Formulation of 1 Step Complete.

As Scotts is now aware,[15] the supposed scientific testing that forms the basis for Scotts various claims of superiority in the Internet Advertisement (including its "torture test") was conducted using an outdated version of Pennington's 1 Step Complete formula.  Scotts' EZ Seed Internet Advertisement represents that the claims contained therein are based on internal testing conducted on EZ Seed and 1 Step Complete in February and March 2011.  (Ex A, Stapp Decl., Ex. 3 at 1-2).  Pennington, however, did not release its current formulation of 1 Step Complete until 2012. (Ex. B, Nicholson Decl. ¶ 5).  Unlike the previous Pennington mulch, which contained roughly 35% wood fiber and 65% cellulose fiber, the new mulch contains 65% wood fiber and 32% cellulose fiber.  (*Id.*)  Therefore, any comparative claims based on Scotts' testing of 1 Step Complete's previous formulation are invalid.  *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 761 (E.D.N.Y. 1996) (noting that defendant "quickly appreciated that the change in formulation rendered any comparative claims based on its field test of the [old]

---

perceived a comparison between the products there was a similar percentage increase (72.5% versus 56.8%) among consumers that viewed the entire Commercial. (*Id.*)

[15] In response to this point in the Georgia hearing, Scotts submitted a declaration saying that the fact that Pennington had changed its formula was a "surprise" to them.  (*See* Sass Decl. ¶ 2). Scotts acknowledges, it is now aware of this fact, but has not changed its advertising claims.

product invalid"); *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 454 (D. Conn. 1994) (concluding promotional letter claiming superiority over hypertension drug was literally false because it used and relied on a scientific study that tested and compared a different formulation of the allegedly inferior drug at issue); *see also Star-Brite Distributing, Inc. v. Kop-Coat, Inc*, 664 F. Supp. 2d 1246, 1254 (S.D. Fla. 2009) (granting a preliminary injunction based on the fact that the tests purportedly conducted by the defendant to establish superiority marketing claims "did not establish the propositions for which they were cited" because the tests were designed to be run on petroleum products with a "different chemical makeup").[16]   By making superiority claims based on 1 Step Complete's old formulation, the Internet Advertisement contains superiority claims against a new 1 Step Complete formulation that Scotts never tested.

> ii.      **The Testing Upon Which Scotts Bases Its Scientific Claims of Superiority Is Fatally Flawed and Biased.**

In addition to the fact that Scotts' advertising claims that currently running are based on testing that was admittedly done using an outdated version of Pennington's products, it has become apparent since the outset of the litigation that were some startling flaws in the methodology employed by Scotts in testing the respective products that would render any conclusions reached therein to be meaningless and invalid.

In response to Pennington's Motion for a Temporary Restraining Order filed in Georgia, Scotts submitted a declaration from Michael Faust, the research scientist responsible for conducting the tests in 2011 upon which Scotts has relied in its superiority marketing claims in the Internet Advertisement.  (*See* Declaration of Michael Faust, dated March 30, 2012 ("Faust Decl.") [Dkt. 25-24-25]).   In his declaration, Faust describes a number of different tests he

---

[16] Pennington's new formulation for the mulch contains a significantly higher amount of wood fiber (65%) and lower amount of cellulose fiber (32%) compared to the old formulation of 1 Step Complete.  (Ex. B, Nicholson Decl. ¶ 5).

performed in 2011 comparing the respective capabilities of EZ Seed and 1 Step Complete in the areas of germination and establishment, water absorption, and moisture retention. (*Id.* ¶ 5). As discussed in the Supplemental Declaration of Kenneth Hignight, dated April 9, 2012 ("Supp. Hignight Decl.") (attached hereto as Exhibit F), the Faust Declaration demonstrates that Scotts used a decidedly biased testing protocol in comparing the two products that was effectively rigged to produce results in favor Scotts.

Specifically, with respect to many of the tests performed, including those designed to test germination and establishment the grass, Scotts applied *twice as much of its own product* as it did of Pennington's. (*Id.* at ¶ 7). Thus, when applied and photographed, it is no wonder that the Scotts product covered the entire sand bed whereas the Pennington product did not. When showing photographs in advertising of products that are intended to perform the same function under torture test conditions, applying half of the competitor's product is horribly unfair and misleading.

Likewise, in tests performed to measure the water retention capabilities of the two products, Scotts admits it used twice the EZ Seed product and applied *four times* the water to its own product as to Pennington's product. (*Id.* ¶¶ 11-12 ).[17] Moisture retention may appropriately measured by wetting *equal* amounts of product by weight with *equal* amounts of water by weight and observing the disappearance of water (evaporation) over time. (*Id.* ¶ 10). The use of equal amounts of product and water in these experiments is imperative to conduct a fair, accurate and unbiased test. (*Id.*) Common sense dictates that grass seed doused with four times as much

---

[17] Scotts performed two different tests in which it applied double the water: one test where it used an equal amount of Scotts and Pennington product but applied twice as much water to the Scotts product and one test where it use twice as much of its own product and applied four times as much water to its own product. (*Id.* at ¶¶ 11-12).

water is going retain that water for a much longer period of time.  As such, there can be no question that the protocol followed by Scotts was rigged to obtain an incorrect result on water retention which now forms the basis for Scotts claims of superiority in this area.  Accordingly, Pennington has a strong likelihood of success on the merits of its claims based on Scotts' "test based" establishment claims in its Internet Advertisement. *C.B. Fleet Co., Inc.*, 131 F.3d at 435; *Castrol, Inc.*, 977 F.2d at 62-63; *Intendis, Inc.*, 2011 WL 4442849, at *8 (literal falsity of an establishment claim can be proven merely by demonstrating that the test on which the claim is based "was not sufficiently reliable to permit the conclusion for which they are cited. . .").

### 3.	The In-Store Advertisement Is False And Misleading.

Scotts completes the circle by disseminating its In-Store Advertisement that further disparages 1 Step Complete.  (Ex A, Stapp Decl. Ex. 3).[18]  Scotts' In-Store advertisement is replete with false and misleading claims about 1 Step Complete.[19]  Specifically, the In-Store Advertisement touts: "REVOLUTIONARY GROWING MATERIAL OUTPERFORMS PAPER MULCH," and contains visuals of two mulch piles, one identified as "Old Technology Ground-Up Paper" and the other as "EZ Seed Super Absorbent Growing Material."  (*Id.* at Ex. 4).  This claim is false and misleading because it misrepresents 1 Step Complete as "old technology" and "paper" that is outperformed by Scotts.  As discussed extensively herein, 1 Step Complete is not

---

[18] By once again referring to 1 Step Complete as "ground-up paper," Scotts' claims mislead and deceive consumers at the point-of-purchase by reinforcing the false message that 1 Step Complete is a paper-only product rather than a comprehensive lawn-care solution that promotes grass growth.

[19] This statement represents a comparison between EZ Seed and 1 Step Complete by necessary implication in light of the exact same direct comparison in the Commercial, the fact that EZ Seed and 1 Step Complete are primary competitors in the mulch seed market, and the fact that Scotts strategically positioned its in-store Advertisement in close proximity to the store shelves where these two products are sold.  *See, e.g., Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) (finding that advertisement compared defendant's brand to competitor brands by necessary implication despite the offending claim's "failure to specifically mention [defendant's] competitors").

paper.  Moreover, the mulch in 1 Step Complete is not "old technology" as it consists of a high-grade, patented mulch blend wood fiber, cellulose fiber, and polymers and extensively tested for high performance and was reformulated in 2012.  (*See* Ex. B, Nicholson Decl. ¶ 7, Ex. 1-2 (discussing and attaching patents covering the mulch formulation)).

Like the Internet Advertisement, the In-Store Advertisement also makes the same false superiority claim that EZ Seed can retain water more than four times longer than 1 Step Complete.  But, as discussed above, Scotts reached this conclusion by rigging its internal tests and adding four times the water to its own product.  (Ex. F, Supp. Hignight Decl. ¶¶ 11-12).  Like the Internet Advertisement, the In-Store Advertisement constitutes an establishment claim because it bears all of the characteristics of a claim that is supported by testing or studies.  Because, as discussed above and in the Supplemental Hignight Declaration, the tests on which these claims are based are demonstrably unreliably, Pennington is likely to succeed on the merits of its claims based on the In-Store Advertisement.  *Intendis, Inc.*, 2011 WL 4442849, at *8.

### 4.   Pennington has a Likelihood of Success on the Remaining Elements of its Lanham Act False Advertising Claims

Because Pennington has demonstrated that Scotts' claims in the Commercial, Internet Advertisement and In-Store Advertisement are literally and impliedly false, the remaining elements of its false advertising claims under the Lanham Act are easily met. [20]

First, the deception contained in these advertising claims is likely to influence the purchasing decision.  *PBM Prods., LLC*, 639 F.3d at 120.  A plaintiff may establish  materiality requirement by showing the defendant's false claim relates to an "inherent quality or

---

[20] The interstate commerce requirement is easily met because it is these products at issue are sold at retail outlets in all 50 states.  (Ex. A, Stapp Decl. ¶¶ 9, 12).  Furthermore, the EZ Seed Commercial has aired nationally on television, the In-Store Advertisement has been displayed in retail stores across the United States, and the Internet Advertisement targets a worldwide audience.  (*Id.* ¶ 9).

characteristic of the article sold." *Cashmere & Camel Hair Mfrs. Inst.*, 284 F.3d at 315. Scotts' advertisements make false and misleading references to 1 Step Complete as "a bunch of ground-up paper" and "paper" which mis-describe the nature, characteristics and quality of 1 Step Complete.

The Maronick Survey results further confirm that Scotts' deceptive advertising influences consumers' perception of the products and purchasing decisions. (Ex. E, Maronick Decl. at 8-9). Specifically, the Maronick Survey demonstrated the claims had a serious impact on consumers as the survey showed a statistically significant increase in the percentage of consumers who responded that they were "Very Unlikely," "Somewhat Unlikely," or "Unlikely" to purchase Pennington's product after viewing Commercial with the disparaging claims in comparison to the control commercial where the claims were removed. (*Id.* at 9).[21]

Second, sales of Pennington's products will certainly continue to be harmed by Scotts' claims because the parties are direct competitors and the claims at issue call out and disparage Pennington's products directly. As discussed above, the Maronick Survey clearly demonstrates consumers are actually being deceived by Scotts' false and misleading advertising and that the claims are adversely affecting consumers' likelihood of purchasing Pennington's product. Accordingly, Pennington has lost, and continues to lose, sales as a direct result of these false and misleading claims. (Ex. E, Maronick Decl. at 11).[22]

Based on the above, Pennington established that Scotts is engaging in advertising that is false and misleading and prohibited under the Lanham Act such that Pennington is likely to

---

[21] Specifically, 65.2% of respondents who viewed the entire commercial were "Very Unlikely," "Somewhat Unlikely," or "Unlikely" to purchase Pennington's competing product while only 57.2% of the Control group who viewed a version of the commercial without such claims gave the same responses. (*Id.*)

succeed on such claims.[23]

### 5.      Pennington Has Moved Expeditiously in Enforcing its Rights.

As discussed above, Pennington has moved expeditiously with respect to its claims and

has brought suit shortly after learning of Scotts' comprehensive advertising campaign aimed at

falsely representing Pennington's products.   Any argument of laches on the part of Scotts is a

dead letter.   In the Sass Declaration, Scotts alludes to the argument that Pennington has not

sought to quickly enforce its rights, simply because Scotts was making references to "paper" in

2011.  (*See* Sass Decl. ¶¶ 22-23).  Scotts relies on a radio advertisement, a YouTube video, and a

side-by-side comparison on one of its websites making allusions to "paper."  (*Id.*).  However, the

radio advertisement on which Scotts relies did not mention Pennington by name and, in that

context,[24] could not have been readily construed to be referring to Pennington.  (Ex. C, Supp.

Stapp Decl. ¶ 4).   Also, the internet advertisement and YouTube video have had a limited

exposure to the public,[25] Pennington considered these to be an insignificant advertising pieces

that did not have the potential to harm Pennington's sales, business reputation, and goodwill—

---

[22]  In addition, Pennington is being forced to expend monies in an attempt to counteract the negative effects of Defendants' false and misleading claims.  (Ex. A, Stapp. Decl. ¶¶ 15-16).

[23]  Pennington is also likely to succeed on its remaining claims under state law because the standards governing the claims under the Georgia Unfair Trade Practices Act, Georgia False Advertising law, and Georgia common law are similar, if not identical, to those under the Lanham Act.  *See, e.g., Rolls-Royce Motors, Ltd. v. A & A Fiberglass, Inc.*, 428 F. Supp. 689, 693-94 (N.D. Ga. 1976) (Georgia trademark statute "is, both in structure and purpose, similar to its federal counterpart"); *cf. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 & n.14 (11th Cir. 1983) (test for deceptive trade practice and unfair competition under Georgia law same as test for false designation of origin under Lanham Act); *Gold Kist, Inc. v. Conagra, Inc.*, 708 F. Supp. 1291, 1303 (N.D. Ga. 1989) (selective Georgia state law claims "involve essentially the same test as the test under § 32 of the Lanham Act").

[24]  This is in contrast to the in-store advertisements discussed above, which, although they do not mention Pennington by name, clearly implicate Pennington based on their in-store positioning and the surrounding visuals.

[25]  For example, the YouTube video has had just 1,639 views in over six months.  (*Id.* ¶ 5, Ex. 1). Also, Pennington was not even aware of the internet advertisement referred to by Mr. Sass.  (*Id.*).

particularly in contrast to the $85 million national advertising campaign Scotts is presently running.  (*Id.*).

**B.**    **Pennington Will Continue to Suffer Substantial Irreparable Harm If Its Motion Is Denied**

Pennington is suffering from irreparable harm every minute that the false and misleading claims denigrating  Pennington's product are exposed to consumers.  Although it does not appear that irreparable harm is presumed in the 4th Circuit,[26] "courts have explained that a demonstration that the competitor's advertising tends to mislead consumers satisfies the Lanham Act's irreparable harm requirement."  *Black & Decker (U.S.), Inc. v. Pro-Tech Power, Inc.*, 26 F. Supp. 2d 834, 862, 865 (E.D. Va. 1998) (finding no irreparable harm where plaintiff "presented no surveys demonstrating that consumers were misled").  *See also JTH Tax, Inc. v. H & R Block Eastern Tax Servs.*, 128 F. Supp. 2d 926, 947-48 (E.D. Va. 2001) ("Because it is 'virtually impossible to prove that so much of one's sales will be lost as a direct result of a competitor's advertisement,' a demonstration that the competitor's advertising tends to mislead consumers satisfies the Act's irreparable harm requirement."), *aff'd in part*, *vacated in part*, *and remanded*, 28 Fed. Appx. 207 (4th Cir. 2002); *Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 547 F. Supp. 2d 491, 505 (D. Md. 2008) ("Therefore, this Court credits Plaintiffs' consumer survey and finds that the results establish consumer confusion. Therefore, Plaintiffs have met their burden of establishing the irreparable harm . . .").

Here, Dr. Maronick's consumer survey results demonstrate that, particularly with respect to the Commercial,[27] Pennington has suffered and will continue to suffer irreparable

---

[26] *PBM Prods., LLC*,  639 F.3d at 127.

[27] Although Dr. Maronick's survey only involved the Commercial, given the similar nature of the remaining claims on the radio, internet, and In-Store Advertisement, Dr. Maronick's results are a

harm in the absence of an injunction.  As stated herein, Dr. Maronick's consumer survey report noted that a statistically significant 7% more consumers who viewed the full unmodified version of the commercial stated that they were somewhat unlikely, unlikely, or very unlikely to buy Pennington's 1 Step Complete products than those who viewed an modified version the disparaging references representing 1 Step Complete as "ground up paper" removed.  (Ex. E, Maronick Decl. at 10).  This represents a substantial decline in perception and purchase intent that are the direct result of the false and misleading claims in the Commercial.   (*Id.*). Furthermore, Dr. Maronick's survey reported that approximately 28% of the viewers who saw the unmodified version "mentioned in response to one of the three open-ended questions . . . that the competitor's product [i.e., 1 Step Complete] consisted entirely or primarily of paper or otherwise exhibited that they were misled about the qualities of Pennington's product." (*Id.* at 8).

Dr. Maronick's survey results show an appreciable decline in the goodwill and likelihood of  purchase among consumers exposed to Scotts' false and misleading claims, which is direct evidence of irreparable harm.  In addition, Pennington has been forced to expend monies to counteract the negative effects of Defendants' false and misleading claims.  (Ex. A, Stapp Decl. ¶ 15).  Accordingly, Pennington has established that it is suffering an irreparable harm and is in need of a preliminary injunction.

### C. 	The Balance Of the Equities Tips In Pennington's Favor

The balance of the equities also tips in Pennington's favor, because, unlike the substantial irreparable harm that will occur to Pennington's sales, reputation, and goodwill if this Motion is not granted, any harm that Scotts will suffer should the Motion be granted will be negligible at

---

strong indication that Pennington is suffering an irreparable harm based on all of Scotts' false and misleading advertising claims.

best.  Rather, granting the Motion will simply prohibit Scotts from continuing to profit from its blatantly unlawful, false and misleading misrepresentations in the Commercial, Internet Advertisement, In-Store Advertisement, and Radio Advertisement.  Requiring Scotts to pull a television commercial, remove false and misleading signage at retail stores and to remove false and misleading internet content is hardly a burden.

### D.   The Public Interest Will Be Served If An Injunction Is Granted

"It is self evident that preventing false or misleading advertising is in the public interest in general*."  PBM Prods., LLC v. Mead Johnson & Co*., 2010 WL 957756, *3 (E.D. Va. March 12, 2010) (Spencer, J.), *aff'd* 639 F.3d 111 (4th Cir. 2011).  One of the primary purposes behind the Lanham Act is to protect the purchasing public from being misled.  *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984).  There does not exist any constitutional or competitive right to engage in deceptive advertising.  *American Home Products Corp. v. Johnson & Johnson* 654 F. Supp. 568, 590 (S.D.N.Y. 1987) (finding that the public interest in being free from deceptive speech takes precedence over the right of commercial speech).

As discussed herein, Scotts' EZ Seed Commercial, Internet Advertisement, and In-Store Advertisement (and now the radio advertisement) convey deceptive messages to consumers regarding the nature, characteristics, and quality of Scotts' EZ Seed and Pennington's 1 Step Complete.  Accordingly, its advertising campaign harms the purchasing public by robbing them of the ability to make educated purchasing decisions.  The public interest will best be served by granting temporary injunctive relief.

## CONCLUSION

For the reasons set forth above, Pennington respectfully requests that this Motion be GRANTED.

Dated: April 9, 2012                         Respectfully submitted,

                                             **PENNINGTON SEED, INC.**


                                             _____/s/_____
                                             Charles M. Sims, Esq. (VSB No. 35845)
                                             Thomas M. Wolf, Esq. (VSB No. 18234)
                                             LeClairRyan, A Professional Corporation
                                             951 East Byrd Street, 8th Floor
                                             Richmond, Virginia 23219
                                             804-783-2003 Telephone
                                             804-783-2294 Facsimile
                                             Charles.sims@leclairryan.com
                                             Thomas.wolf@leclairryan.com

                                             Ronald Y. Rothstein (*pro hac vice*)
                                             Winston & Strawn LLP
                                             35 West Wacker Drive
                                             Chicago, IL 60601
                                             Phone:  312-558-5600
                                             Fax:  312-558-5700
                                             rrothstein@winston.com

                                             *Attorneys for Pennington Seed, Inc.*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on the 9th day of April, 2012, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Stephen P. Demm
HUNTON & WILLIAMS LLP
951 E. Byrd Street
Riverfront Plaza
Richmond, VA 23219
788-8200 phone
sdemm@hunton.com

Bradley W. Grout
HUNTON & WILLIAMS LLP
600 Peachtree Street NE, Suite 4100
Atlanta, GA 30308
404-888-4283 phone
404-888-4190 fax
bgrout@hunton.com

*Counsel to Defendant The Scotts Miracle-Gro Company, Inc.*

_____/s/_____
Charles M. Sims, Esq. (VSB No. 35845)
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
804-783-2003 Telephone
804-783-2294 Facsimile
Charles.sims@leclairryan.com